716 So.2d 769 (1998)
Gary BOWLES, Appellant,
v.
STATE of Florida, Appellee.
No. 89261.
Supreme Court of Florida.
August 27, 1998.
*770 Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for Appellee.
PER CURIAM.
Appellant Gary Bowles appeals his death sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We review and affirm appellant's first-degree murder conviction. We reverse appellant's death sentence and remand for a new sentencing proceeding because the trial court erred in allowing the State to introduce evidence of appellant's alleged hatred of homosexual men. We conclude that such error was not harmless because it was a feature of the penalty phase, thereby casting doubt on the reliability of the sentencing proceeding.
The record reflects the following facts. Appellant met Walter Hinton, the victim in this case, at Jacksonville Beach in late October or early November 1994. Appellant agreed to help Hinton move some personal items from Georgia to Hinton's mobile home in Jacksonville. In return, Hinton allowed appellant to live with him at his mobile home.
On November 22, 1994, police arrested appellant for the murder of Walter Hinton. During subsequent interrogation, appellant gave both oral and written confessions regarding Hinton's murder. Appellant stated that upon returning home from going with Hinton to take a friend to the train station, Hinton went to sleep and appellant kept drinking. Appellant, Hinton, and the friend had drunk beer and smoked marijuana earlier. At some point in the evening, appellant stated that something inside "snapped." He went outside and picked up a concrete block, brought it inside the mobile home, and set it on a table. After thinking for a few minutes, appellant picked up the block, went into Hinton's room, and dropped the brick on Hinton's head. The force of the blow caused a facial fracture that extended from Hinton's right cheek to his jaw. Hinton, now conscious, fell from the bed and appellant began to manually strangle him. Appellant then stuffed toilet paper into Hinton's throat and placed a rag into his mouth. The medical examiner testified that the cause of death was asphyxia.[1]
The grand jury indicted appellant on charges of first-degree murder and robbery. Appellant pled guilty to premeditated first-degree murder. Following a penalty-phase proceeding, the jury recommended death by a vote of ten to two. The trial court followed the jury's recommendation and sentenced appellant to death for the first-degree murder of Walter Hinton. Appellant raises ten issues on appeal.[2] Because we remand this *771 case for a new sentencing proceeding, we address only one issue.
We find appellant's contention that irrelevant evidence became the focus of the sentencing proceeding dispositive in this case. Appellant claims that much of the State's case improperly focused upon appellant's alleged hatred of homosexuals because the State failed to establish any connection between appellant's alleged hatred and Hinton's murder. Specifically, appellant challenges the State's evidence concerning Hinton's homosexuality, appellant's relationship with homosexual men, and appellant's alleged hatred of homosexual men. Appellant contends that the evidence and argument based on this evidence was irrelevant and that the trial court's error in allowing such evidence and argument rendered the sentencing proceeding unreliable.
The record supports appellant's assertion that the State's primary theory of this case was that appellant killed Hinton because Hinton was a homosexual and appellant hated homosexuals. In its opening statement, the State explained this theory to the jury as follows:
Mr. Hinton was a homosexual. And [appellant] didn't like homosexuals. In fact, [appellant] had two former girlfriends who left him because of [his] lifestyle.
Defense counsel immediately objected and moved for a mistrial, arguing that the State had discussed inadmissible evidence. Defense counsel specifically questioned the relevancy of such evidence. The State responded that the evidence would be relevant for the purpose of establishing motive and the cold, calculated, and premeditated (CCP) aggravating circumstance. The trial judge overruled the objection and denied appellant's motion for a mistrial. The State continued:
As I stated, let me digress a minute and explain to you what the State believes were the reasons why [appellant] killed Mr. Hinton.
Number one, that the victim in this case is a homosexual. That is, that he didn't like them, that is, [appellant] didn't like them. As I stated, two former girlfriends of the [appellant] had left him because of his interaction with men. That they didn't approve of what he was doing. In fact, one of these women had an abortion, per [appellant's] statement, and [appellant] blamed gays for that.
During its case-in-chief, the State offered the following evidence. First, the State called Detective Collins. Defense counsel was aware from Collins' pretrial deposition that the State intended to use him to establish the "homosexual motive." Therefore, before the presentation of any testimony, defense counsel objected and sought to preclude any statements regarding this motive on the ground, among others, that such statements were irrelevant. During a sidebar conference on appellant's objection, the following colloquy took place between the trial court and the prosecutor:
THE COURT: Well, there has to be some restriction in light of the fact that he has pled guilty. You are allowed to present the evidence of the murder as it relates to the aggravating factors. And I have given you some latitude. But I would agree with [defense counsel] if it goes solely as to the motive, I don't know that I would let it in. But if it goes to aggravators... I would. But, quite frankly, I don't understand the argument.
[Prosecutor]: Well, if somebody hates homosexuals, and he kills homosexuals, and, in fact, later on he explains the reason why he killed them is ... and he relates it 

*772 THE COURT: Wait a minute.
If he explains to this officer that he killed Mr. Hinton because he hates homosexuals, then it would be admitted if that is what you are going to present.
But if you are going to present a casual conversation that he hates homosexuals, and you are not going to tie it in with any evidence as to that's why he killed Mr. Hinton,well, you are going to say because Mr. Hinton was a homosexual and because in this conversation he said he didn't like homosexuals, therefore, he killed Mr. Hinton?
[Prosecutor]: I believe I can tie it in, Judge, in this case.
THE COURT: All right.
Based on the State's representation that it would "tie it in," the trial judge allowed Collins to testify about what appellant had told him regarding appellant's ex-girlfriend, who had an abortion in 1985. Appellant was the putative father. Collins testified that appellant told him that appellant's ex-girlfriend had the abortion and separated from him because of what he was "doing with men." Collins also testified that as a result of the abortion, appellant stated that he "felt that homosexuals were responsible for the loss of the baby, and that they had ruined his life with women."
Next, the State presented Timothy Daly, a jail-house informant, who testified that appellant confessed to him that he killed Hinton. During his testimony, Daly stated that appellant admitted to "rolling faggots" in Daytona Beach. The court sustained a defense objection to this testimony and issued a curative instruction.
Following Daly on the stand was FBI Agent Dennis Regan. Regan testified as follows:
Q [Prosecutor]: Did the defendant admit being a hustler, sir?
A [Regan]: Yes, he did.
Q And did he state why he was a hustler, sir?
A He did it to generate income.
Q And did he state anything regarding having sex with men, whether he liked it or not?
A He disliked it.
Q Did you ask him whether he was a homosexual, according to him; yes or no?
A I asked him, and he answered no.
Regan also testified that appellant was upset with appellant's ex-girlfriend "for killing his unborn child without his knowledge or consent."
Later, the State presented Corporal Jan Edenfield of the Tampa Police Department for the purpose of establishing that appellant was convicted of a prior violent felony. Edenfield testified about the facts surrounding a sexual battery that appellant committed in 1982. On redirect examination, the State asked whether the victim mentioned what appellant's occupation was at that time. The witness responded that the victim told her that appellant "was a hustler," a "male prostitute."
In its closing, the State argued as follows:
Walter Jammell Hinton is dead. He died at the hands of this man right there. He died because he was a caring person, allowing strangers to live in his home. And I would submit to you that he died because he was a homosexual.
....
What did he say? It's not in the written statement, but he was asked by both FBI agent Mr. Regan, and by Detective Collins. He hated homosexuals. And you may think well, you know, if he hates homosexuals, what is he doing with a person who is a homosexual? In this case, the victim. I'm sorry to be talking about him that way, about the victim. But that's reality.
Well, he was a hustler, as you will recall, which means he basically hustled men. Now, there is no evidence in this case that he had sex with the victim or that the victim had sex with him.
You will recall that hatred that he had. Do you recall how he blamed homosexual men because of the abortion of his child? Why is that relevant? Because in his mind they were responsible for the deaths of his child in that the former girlfriend, who had his child, didn't want him hustling men anymore. And she left him and she had *773 an abortion. And in his mind they were responsible.
Because of the victim's lifestyle does this mean he should be killed? I asked you that in jury selection. I'm not trying to imply anything in the sense ofin any way that you should think about homosexuals. I don't care what a person's views are about that. He is a human being. Do you think because he has a certain lifestyle that doesn't mean he should get killed. Because when do we stop? What do we say about people because of the color of their skin, or how much they weigh or how tall they are. I mean, where would it stop.
But see his words in the written statement? "I snapped." I was suffering from all these mental illnesses, and, I kind of, you know, lost it. I don't know what happened. Yeah, I have got this hatred of homosexuals. Yeah, I have all these other things. No, I'm not a homosexual. Yeah, they had sex with me, but I'm not a homosexual. But I have this hatred of homosexuals. And I'm a hustler and this former girlfriend left me, and I'm holding them accountable. But, no, I just kind of snapped. You know, this is just coincidence that the victim in this case is dead.
Initially, we reject the State's position that this issue was not preserved for appellate review. Appellant objected when the State first mentioned its "homosexual motive" theory in its opening statement. Appellant again objected before Detective Collins took the stand in anticipation of his testimony regarding the 1985 abortion and appellant's statements concerning the abortion. When Timothy Daly testified that appellant made a living "rolling faggots," appellant objected. Finally, during closing arguments, appellant objected when the State argued its "homosexuality motive." On this record, we find that appellant's claim was sufficiently preserved for review.
As to the merits of appellant's claim, because appellant pled guilty, the State contends that it was entitled to present evidence which familiarized the sentencing jury with the underlying facts of the case and the circumstances surrounding the murder. The State argues that the fact that the victim was a homosexual and that appellant had evinced a dislike or hatred of homosexuals was relevant to establishing both motive and CCP. Although we agree that the State is to be allowed to prove motive in this sentencing-only proceeding, we disagree that the above-cited testimony and argument were relevant to proving a material fact in this case because the State's evidence failed to demonstrate a causal connection between Hinton's alleged homosexuality, appellant's alleged "hatred of homosexuals," and the murder. Rather, the cited testimony and argument based upon this record were simply an attack on appellant's character unconnected to this murder.
Section 90.401, Florida Statutes (1993), provides that "[r]elevant evidence is evidence tending to prove or disprove a material fact." Based on this record, we conclude that the State's evidence regarding the 1985 abortion, appellant's purported feelings toward homosexuals as a result of the abortion, and appellant's relationship with homosexual men, had no logical tendency to prove either motive or CCP. The State simply never linked, as it promised it would, this evidence to the murder of Walter Hinton. Although appellant's statements that he blamed homosexuals for the abortion of his unborn child came during an interrogation, neither Collins nor Regan testified that appellant stated that this was the reason for murdering Hinton. Without any connection to this specific murder, appellant's statements, by themselves, are not relevant to proving either motive or CCP in this case.
Furthermore, we conclude that the trial court's error in allowing this circumstantial evidence and the arguments based on this evidence was not harmless because it became a feature of the sentencing proceeding. Thus, we doubt the reliability of the sentencing proceeding. See Hitchcock v. State, 673 So.2d 859 (Fla.1996).
Accordingly, we affirm appellant's conviction but reverse the death sentence and remand for a new sentencing proceeding before a jury.
It is so ordered.
*774 HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The medical examiner was unable to testify with certainty as to whether the asphyxia was caused by manual strangulation or by the stuffing of the toilet paper and rag down into Hinton's throat.
[2] Appellant claims that: (1) the trial court erred in admitting evidence of the victim's homosexuality and appellant's hatred of homosexual men; (2) the trial court erred in denying appellant's motion for a mistrial after witnesses testified that appellant was "rolling faggots" in Daytona Beach and that he "drank to make it easier to kill"; (3) the trial court erred in failing to find statutory mental mitigators; (4) the trial court erred in finding that appellant committed the murder during the course of an attempted robbery and for pecuniary gain; (5) the trial court erred in finding HAC; (6) the trial court erred in failing to instruct the jury it could consider appellant's defective mental condition to diminish the weight given to HAC; (7) a death sentence is disproportionate; (8) the trial court erred in giving the standard jury instruction on HAC; (9) the trial court erred in instructing the jury on CCP using an unconstitutionally vague instruction; and (10) the felony murder aggravator is unconstitutional on its face and as applied in this case.