804 So.2d 1173 (2001)
Gary Ray BOWLES, Appellant,
v.
STATE of Florida, Appellee.
No. SC96732.
Supreme Court of Florida.
October 11, 2001.
Rehearing Denied January 10, 2002.
*1174 Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
We have on appeal an order of the trial court imposing a death sentence upon Gary Ray Bowles on resentencing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the death sentence.
Our prior opinion sets forth the facts of this crime:
Appellant [Bowles] met Walter Hinton, the victim in this case, at Jacksonville *1175 Beach in late October or early November 1994. Appellant agreed to help Hinton move some personal items from Georgia to Hinton's mobile home in Jacksonville. In return, Hinton allowed appellant to live with him at his mobile home.
On November 22, 1994, police arrested appellant for the murder of Walter Hinton. During subsequent interrogation, appellant gave both oral and written confessions regarding Hinton's murder. Appellant stated that upon returning home from going with Hinton to take a friend [Richard Smith] to the train station, Hinton went to sleep and appellant kept drinking. Appellant, Hinton, and the friend had drunk beer and smoked marijuana earlier. At some point in the evening, appellant stated that something inside "snapped." He went outside and picked up a concrete block, brought it inside the mobile home, and set it on a table. After thinking for a few minutes, appellant picked up the block, went into Hinton's room, and dropped the brick on Hinton's head. The force of the blow caused a facial fracture that extended from Hinton's right cheek to his jaw. Hinton, now conscious, fell from the bed and appellant began to manually strangle him. Appellant then stuffed toilet paper into Hinton's throat and placed a rag into his mouth. The medical examiner testified that the cause of death was asphyxia.
Bowles v. State, 716 So.2d 769, 770 (Fla. 1998).
The grand jury indicted Bowles in December of 1994 on charges of first-degree murder and robbery. Bowles pled guilty to premeditated first-degree murder. The penalty phase proceeded, and following the jury's ten-to-two recommendation for death, the trial court sentenced Bowles to death. On appeal, this Court affirmed the conviction but vacated the death sentence and remanded for resentencing. See Bowles, 716 So.2d at 769. We found that the trial court erred in allowing the State to introduce in the penalty phase evidence of Bowles' alleged hatred of homosexual men. See id. at 773. We concluded that the presentation of such evidence was not harmless because it became a prevalent feature of the penalty phase, thereby placing in doubt the reliability of the sentencing proceeding. See id.
On remand, the resentencing jury unanimously recommended death. In imposing the death penalty the trial court found the following five aggravating circumstances: (1) Bowles was convicted of two other capital felonies and two other violent felonies; (2) Bowles was on felony probation in 1994 when he committed the murder as a result of a July 18, 1991, conviction and sentence to four years in prison followed by six years probation for a robbery he committed in Volusia County; (3) the murder was committed during a robbery or an attempted robbery, and the murder was committed for pecuniary gain (merged into one factor); (4) the murder was heinous, atrocious, or cruel (HAC); and (5) the murder was cold, calculated, and premeditated (CCP).
The trial court assigned tremendous weight to the prior violent capital felony convictions. On September 27, 1982, in Hillsborough County, Bowles was convicted of sexual battery and aggravated sexual battery. These offenses involved an extremely high degree of violence. The victim, Bowles' girlfriend at the time, was brutally attacked, suffering contusions to her head, face, neck, and chest, as well as bites to her breasts. The victim also suffered internal injuries including lacerations to her vagina and rectum. On July 18, 1991, Bowles was convicted in Volusia *1176 County of unarmed robbery. In this offense, Bowles pushed a woman down and stole her purse. On August 6, 1997, in Volusia County, Bowles was convicted of first-degree murder and armed burglary of a dwelling with a battery. In this crime, a few days after moving into the victim's home, Bowles approached the victim from behind and hit him with a lamp. A struggle ensued during which Bowles strangled the victim and stuffed a rag into his mouth. Bowles then emptied the victim's pockets, took his credit cards, money, keys, and wallet. On October 10, 1996, in Nassau County, Bowles was convicted of first-degree murder. The victim befriended Bowles and allowed Bowles to stay at his home. Bowles and the victim got into an argument and a fight outside of a bar. Bowles hit the victim over the head with a candy dish, and a struggle ensued, resulting in the victim being beaten and shot. Bowles also strangled the victim and tied a towel over his mouth.
The trial court assigned great weight to the HAC and CCP aggravators, significant weight to the robbery-pecuniary gain aggravator, and some weight to the fact that Bowles was on probation for robbery at the time of this murder.
The trial court rejected the two statutory mitigators advanced by Bowles: (1) extreme emotional disturbance at the time of the murder and (2) substantially diminished capacity to appreciate the criminality of his acts at the time of the murder. The trial court found and assigned weight to the following nonstatutory mitigating factors: significant weight to evidence that Bowles had an abusive childhood; some weight to Bowles' history of alcoholism and absence of a father figure; little weight to Bowles' lack of education; little weight to Bowles' guilty plea and cooperation with police in this and other cases; little weight to Bowles' use of intoxicants at the time of the murder; and no weight to the circumstances which caused Bowles to leave home or his circumstances after he left home. The trial court concluded that the aggravating circumstances overwhelmingly outweighed the mitigating circumstances.
On appeal to this Court, Bowles raises twelve issues. Bowles claims that: (1) the trial court erred in allowing the use of peremptory challenges to remove prospective jurors who were in favor of the death penalty but would only impose it under appropriate circumstances; (2) the trial court erred in allowing the State to introduce in aggravation for the first time at this resentencing hearing evidence of two prior similar murders for which the defendant was convicted after the first sentencing hearing; (3) the trial court erred in finding HAC; (4) the trial court erred in rejecting the proposed HAC jury instruction; (5) the trial court's CCP instruction to the jury was unconstitutionally vague; (6) the trial court erred in finding the robbery-pecuniary gain aggravator; (7) the trial court erred by giving little weight or no weight to the nonstatutory mitigators; (8) the trial court erred in rejecting the proposed victim impact evidence jury instruction; (9) the trial court erred by rejecting the two statutory mental mitigators of extreme emotional disturbance at the time of the murder and substantially diminished capacity to appreciate the criminality of acts at the time of the murder; (10) the trial court erred in giving the standard jury instruction on mitigation instead of the requested specific nonstatutory mitigation instructions; (11) the trial court erred in rejecting the requested jury instructions defining mitigation; and (12) the trial court committed reversible error in allowing impermissible hearsay.
We summarily reject Bowles' claims that have been previously considered and rejected. Bowles' first claim, that the use of *1177 peremptory challenges was improper, is without merit. We have previously stated that the Florida Constitution does not bar the State and the defense from peremptorily striking persons thought to be inclined against their respective interests. See San Martin v. State, 705 So.2d 1337, 1343 (Fla.1997). Bowles' second claim, that the trial court erred in allowing the introduction of two prior murder convictions, is without merit, as we have previously held that a resentencing court may find aggravators not found in the original sentencing proceeding. See Preston v. State, 607 So.2d 404, 407-09 (Fla.1992). Bowles' fourth claim, alleging that the proposed special HAC jury instruction which included an intent element was erroneously rejected, is without merit. See Guzman v. State, 721 So.2d 1155, 1160 (Fla.1998) (there is no necessary intent element to HAC aggravating circumstance). Bowles' fifth claim, concerning the standard CCP jury instruction, is without merit as we have found that the standard CCP jury instruction is not unconstitutionally vague. See Donaldson v. State, 722 So.2d 177, 187 n. 12 (Fla.1998). Bowles' eighth claim, concerning the victim impact evidence jury instruction, is without merit because the trial court properly instructed that, while the jury was allowed to hear victim impact evidence, it could not be considered as an aggravating circumstance in sentencing Bowles. This instruction comports with the requirements of Alston v. State, 723 So.2d 148, 160 (Fla.1998), and Windom v. State 656 So.2d 432, 438 (Fla.1995). Bowles' tenth and eleventh claims are without merit, as we have repeatedly rejected the argument that a trial court errs in giving the standard jury instruction on mitigation. See Davis v. State, 698 So.2d 1182, 1192 (Fla.1997). We turn to issues three, six, seven, and twelve, which we now discuss in further detail.

I. ISSUES THREE AND SIX
In his third and sixth claims, Bowles contends that the trial court erred in finding certain aggravating circumstances. In reviewing the trial court's finding of an aggravating circumstance, it is not this Court's function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubt. This is the trial court's job. See Willacy v. State, 696 So.2d 693, 695-96 (Fla.1997). Rather, this Court reviews the record to determine whether the trial court applied the correct rule of law for each applicable aggravator and, if so, whether such finding is supported by competent, substantial evidence. See id.

A. Issue Three
In his third claim, Bowles argues that the trial court erred in finding the HAC aggravator because the victim could not have had foreknowledge of his impending death. The trial court stated in its sentencing order:
While Mr. Hinton [the victim] was sleeping, the Defendant [Bowles] went outside the mobile home and lifted from the ground a 40-pound cement stepping stone and brought it inside. He placed the stepping stone on a table in the living room area, sat down and thought for a few moments. He then entered Mr. Hinton's bedroom and dropped the cement stepping stone on Mr. Hinton's face. Mr. Hinton sustained a skull fracture across his cheek to the roots of his teeth. Despite the force of this blow, Mr. Hinton did not die nor lose complete consciousness. In an effort to save his life, Mr. Hinton struggled with the Defendant. The Medical Examiner observed on Mr. Hinton's body five (5) broken ribs, abrasions to the front and back of his right forearm, and more *1178 abrasions on the outside of his left knee. These findings corroborate the Defendant's statement that Mr. Hinton continued to struggle for his life after the Defendant dropped the 40-pound stone on his face.

The findings of the Medical Examiner also corroborate the Defendant's statement that he then choked Mr. Hinton with his hands. Mr. Hinton had hemorrhaging on the right side of his neck. The helix bone, a "U" shaped bone found at the top of the neck, and the hyoid bone located underneath his Adam's Apple were fractured. Toilet paper was stuffed down his throat and a rag was placed over the paper which protruded from his mouth. The Medical Examiner "logically assumed" that Mr. Hinton was strangled to death or to unconsciousness and these items were then stuffed down his throat blocking his airway and resulting in his death.
The Defendant argues in his Memorandum that although the intensity of the struggle was great and resulted in suffering by Mr. Hinton, there is no evidence that the Defendant intended to do anything but to kill by whatever means were at hand. He further argues that he did not set out to strangle, choke, or beat Mr. Hinton to death. Lastly, he argues that he was intoxicated, which he suggests negates the finding that he intended to cause pain.
The Court finds that Mr. Bowles was, as he argues, prepared to take the life of Walter Hinton by any means available. Although this Court cannot determine if Mr. Bowles enjoyed the suffering of Walter Hinton, he was certainly indifferent and determined to take his life. Since the Defendant could not have known with certainty whether crushing Walter Hinton's face with a 40 pound stepping stone would take his life, he was prepared to inflict further suffering. This is just what he had been prepared to do only months earlier when he took the life of Mr. Roberts in Volusia County.
Finally, the fact that Mr. Hinton was likely unconscious when the toilet paper and rag were stuffed down his throat, does not bar a finding that the Defendant's conduct was [conscienceless], pitiless heinous, atrocious and cruel. Without a struggle, the Defendant's efforts to strangle Mr. Hinton would have, according to the medical examiner, taken at least 30 to 45 seconds before a loss of consciousness. With a struggle, Mr. Hinton would have endured the fright, pain and fear of being strangled for an even longer period.
State v. Bowles, No. 94-12188-CF, sentencing order at 5-7 (Fla. 4th Cir. Ct. order filed Sept. 7, 1999) (emphasis added).
In Rogers v. State, 783 So.2d 980, 994 (Fla.2001), we recently stated that:
In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily tortuous [sic] to the victim. A finding of HAC is appropriate only when a murder evinces extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.
(Citation omitted.) Strangulation of a conscious murder victim evinces that the victim suffered through the extreme anxiety of impending death as well as the perpetrator's utter indifference to such torture. Accordingly, this Court has consistently upheld the HAC aggravator in cases where a conscious victim was strangled. See Mansfield v. State, 758 So.2d 636, 645 (Fla.2000), cert. denied, 532 U.S. 998, 121 S.Ct. 1663, 149 L.Ed.2d 644 (2001); Hildwin v. State, 727 So.2d 193, 196 (Fla.1998); *1179 Orme v. State, 677 So.2d 258, 263 (Fla. 1996).
In light of the evidence of a great struggle and the medical examiner's testimony, we find that competent, substantial evidence in the record supports the trial court's finding that the victim was strangled while conscious for a time sufficient to suffer a physically and mentally cruel and torturous death. See Mansfield, 758 So.2d at 645. Accordingly, we affirm the trial court's finding of HAC.

B. Issue Six
Bowles' sixth claim is that the trial court erred in finding the robbery-pecuniary gain aggravator. In its sentencing order, the trial court further stated:
Mr. Hinton was found inside his locked home on November 22, 1994. His sister and her then fiancé became concerned when he failed to respond to telephone calls and knocks on his door. After several days went by without word form Mr. Hinton, the fiancé broke into his locked mobile home and found his dead body wrapped in sheets and bedspreads.
Mr. Hinton's watch, car keys, automobile and stereo equipment were missing form the home. Stereo wires had been cut. A knife was on the floor next to where the stereo equipment had formerly been. His wallet was found on the floor next to the bed. The Defendant was seen after the murder driving Mr. Hinton's car and wearing his watch.
Although the Defendant admits that property of Mr. Hinton was taken, he submits that it was an afterthought and not the motivation for the murder. He suggests that his subsequent abandonment of the automobile and watch proves that he was not motivated by pecuniary gain. However, his prior statements prove otherwise. In his statements to Agent Dennis Reegan of the FBI, the Defendant stated he expected to find money on the victim or in the trailer. When he didn't find any, he felt stuck and unable to flee because he had no money and no other place to go. This evidence establishes beyond a reasonable doubt that the murder was committed in the course of an attempted robbery or robbery. The fact that money was not there to be taken does not preclude the finding of this aggravating circumstance.
. . . .
[The] aggravating factor [that Bowles committed the murder for financial gain] was proved beyond a reasonable doubt, but merges with the above aggravating factor and has been treated as one by the Court.
State v. Bowles, sentencing order at 4-5.
Bowles argues that the taking of Hinton's property was an afterthought and that such a taking shortly after the murder, without any other evidence showing that pecuniary gain was the motive for the killing, provides insufficient evidence that the robbery-pecuniary gain aggravator applies. In support of his afterthought argument Bowles cites to Elam v. State, 636 So.2d 1312 (Fla.1994), and Hill v. State, 549 So.2d 179, 182-83 (Fla.1989).
In Beasley v. State, 774 So.2d 649, 662 (Fla.2000), we recently opined:
Where an "afterthought" argument is raised, the defendant's theory is carefully analyzed in light of the entire circumstances of the incident. If there is competent, substantial evidence to uphold the robbery conviction, and no other motive for the murder appears from the record, the robbery conviction will be upheld. Conversely, in those cases where the record discloses that, in committing the murder, the defendant was apparently motivated by some reason *1180 other than a desire to obtain the stolen valuable, a conviction for robbery (or the robbery aggravator) will not be upheld.
(Citations omitted.) As in Beasley, the present case is distinguishable "from cases in which there is another apparent motivation for the killing, and no indication that the defendant wants or needs the valuables which are taken after the murder." Id. at 666. In Elam, we held there was insufficient evidence to support the pecuniary gain aggravator where the defendant, who managed the victim's motorcycle parts store, killed the victim in a fight that erupted after the defendant was accused of misappropriating store funds. See Elam, 636 So.2d at 1314. The facts of Elam indicated that although the fight began over the missing funds, "the theft had long been completed and the murder was not committed to facilitate it." Id. In Hill, we struck the pecuniary gain aggravator where the evidence indicated that the murder could have been motivated by defendant's desire to rape and beat the victim. See Hill, 549 So.2d at 181, 183.
In contrast, in the present case, there is no other apparent motivation for this murder other than as part of a taking of the victim's property for Bowles' pecuniary gain. When Hinton was discovered, his watch and stereo equipment were missing, and his wallet was found on the floor next to the bed. Two days after the murder, Bowles was seen driving Hinton's car and wearing Hinton's watch. Furthermore, Bowles confessed to taking Hinton's car. We find this case very similar on this issue to Finney v. State, 660 So.2d 674, 680 (Fla.1995), in which we upheld the robbery-pecuniary gain aggravator. See also Jones v. State, 652 So.2d 346, 350 (Fla. 1995) (rejecting "afterthought" argument as applied to valuables taken from victims where no other motivation for murders appeared from record). The trial court's finding of the robbery-pecuniary gain aggravator is supported by competent, substantial evidence.

ISSUES SEVEN AND NINE
In his seventh claim, Bowles argues that the trial court failed to appropriately weigh all nonstatutory mitigating evidence. Bowles' ninth claim is that the trial court erroneously rejected the two statutory mental mitigating factors: (1) the murder was committed while Bowles was under the influence of extreme mental or emotional disturbance; and (2) Bowles' capacity to appreciate the criminality of his acts at the time of the homicide was substantially diminished by his alcohol and drug abuse. We disagree.
The trial court made the following findings with regards to mitigating factors.
B. Statutory and Other Mitigating Factors.
The Defendant asserts the following as statutory or other mitigating factors reasonably established by the greater weight of the evidence:
1. The Defendant suffered from extreme emotional disturbance at the time of the murder.

The Defendant asserts that evidence of his drinking and abusive childhood requires the finding that at the time of Mr. Hinton's murder, he was suffering from an extreme emotional disturbance. His theory, unsupported by expert testimony, is that the rage within him was unleashed by the use of alcohol and drugs. He argues that the 1982 prior violent felony in which he raped and battered his girlfriend, and Mr. Hinton's murder, can only be explained in the context of an underlying emotional disturbance.
The Court finds that the Defendant is an alcoholic and has been using drugs and alcohol since his youth, and that *1181 many members of his family and extended family are alcoholics. However, this evidence does not support a finding of this mitigator unless being an alcoholic, standing alone, meets the definition of an extreme emotional disturbance. If so, then the Court would find this statutory mitigator to have been met by the evidence, but entitled to little weight.
2. The capacity of the Defendant to appreciate the criminality of his acts, was, at the time of the homicide, substantially diminished.

The Defendant contends that his level of intoxication at the time of the murder substantially reduced his ability to appreciate the criminality of his conduct. On the day of the murder he had been drinking heavily. He drank six beers on his way to the train station with Mr. Hinton and Mr. Smith. He continued to drink. Although the Court finds that the Defendant was under the influence of drugs and alcohol at the time of the murder, the greater weight of the evidence does not sustain finding that his ability to appreciate the criminality of his acts was substantially diminished.
To commit this crime, the Defendant waited for Mr. Hinton to fall asleep. He needed a hard object to overpower Mr. Hinton. He thought of a stepping stone outside, which was embedded in the ground. He had to lift this heavy object and bring it inside. He then had to enter quietly into Mr. Hinton's room. He had to aim the stone so it fells squarely on Mr. Hinton's head. He had to fend-off Mr. Hinton's efforts to save his life. He was able to think, act, and react in order to commit this murder, despite being under the influence of drugs and alcohol. When he was arrested approximately six days later, he was able to relate with clarity and detail how he killed Mr. Hinton. His only omission was how he stuffed toilet paper down Mr. Hinton's throat. He was also able to tell of events leading up to, and following, the murder. These facts prove to the Court that although he had ingested a substantial amount of alcohol and smoked marijuana, his ability to appreciate the criminality of his conduct was not substantially diminished.
The defendant also argues that there was nothing in his "post-murder actions" to indicate that he was acting in a normal sober manner. After the killing, he was able to drive a car, purchase additional liquor, pick-up a woman on the beach and bring her back to the mobile home where he committed the murder. He was also sufficiently alert to keep her from the room in which Mr. Hinton's dead body lay covered in sheets. These events do not describe an individual whose ability to function and appreciate the criminality of his acts were substantially diminished. On the contrary, this evidence strongly suggests that Mr. Bowles was minimally affected by alcohol and drugs, despite his extensive use. The Court has given no weight to this factor.
3. Background and/or Personal History of the Defendant.

The Defendant enjoyed a good childhood until age six or seven. However, by age ten he was sniffing glue and huffing paint. The discipline utilized by both his stepfathers was abusive. Beatings were administered on occasion with belts and fists. His mother testified that on occasion when she returned from work, she observed him bruised from the whippings. His mother was the victim of severe abuse which was witnessed by the defendant and his siblings.
The Defendant further asserts as mitigation the fact that he never had a positive male role model in his life. He *1182 was abandoned by his mother, who chose an abusive stepfather over him. He did not receive parental encouragement to perform in school. He did not complete junior high school and did not receive the necessary educational tools to function well as a productive member of society. He also asserts his intoxication at the time of the offense, and extensive alcoholic background, to support this element of mitigation.
The Defendant further submits that he provided testimony on behalf of the State of Florida in a case where a man was raped in a jail in Tampa, Florida. He further asserts that he cooperated by confessing to the instant crime and other crimes, and by voluntarily pleading guilty in the instant case and in two other homicide cases.
The Court has carefully considered the evidence regarding the Defendant's abusive childhood and the severe abuse endured by his mother which he witnessed as a child. Those factors are given significant weight. The Court has also given some weight to the Defendant's history of alcoholism and the absence of a true father figure in his home during his childhood. The Court has given little weight to the Defendant's failure to complete junior high school and lack of an education; or his cooperation in this and other cases; or his voluntary pleas of guilty to this and other murders.
The Court has also given little weight to the defendant's use of intoxicants and drugs at the time of the murder. The frequency with which the Defendant has used this as an explanation to law enforcement officers, when confronted about his violent actions, causes the court to give this factor less weight as mitigation and more weight as a convenient, but poor excuse. The Court has not given any weight to the circumstances after he left home. As to the latter, no evidence was presented.
After carefully considering and weighing the aggravating and mitigating circumstances found to exist in this case, and mindful that human life is at stake in the balance, the Court finds that the aggravating circumstances proved beyond a reasonable doubt overwhelmingly outweigh the mitigating circumstances reasonably established by the evidence.
Sentencing Order at 11-15.
As to Bowles' seventh claim, contrary to Bowles' contention, the sentencing order demonstrates that the trial court made specific findings with regard to each mitigating circumstance presented by the defense. Indeed, the trial court gave significant mitigating weight to Bowles' abusive childhood and the abuse endured by his mother, which Bowles witnessed as a child, and some weight to Bowles' history of alcoholism and the absence of a true father figure in his home during his childhood. Under the total circumstances of this murder and on the basis set forth by the trial judge in the sentencing order, we find no error in the trial court's assignment of little weight to Bowles' use of intoxicants and drugs at the time of the murder. The trial court was well within its discretion in making and weighing such findings. Therefore, we find no error. See Trease v. State, 768 So.2d 1050, 1055 (Fla.2000); Bonifay v. State, 680 So.2d 413 (Fla.1996).
We find the trial court's findings similar to what we approved in Brown v. State, 721 So.2d 274, 281 (Fla.1998) (footnote omitted):
Brown argues that the trial court erred in rejecting as a statutory mitigating factor that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of *1183 the law was substantially impaired due to excessive alcohol and drug use both on the day of and during the two weeks prior to the murder. We have held that evidence of impaired capacity due to intoxication must be considered as a mitigating factor where the existence of such facts is established by evidence anywhere in the record. [Hardwick v. State, 521 So.2d 1071, 1076 (Fla.1988).] However, evidence of alcohol and marijuana consumption on the day of the murder, without more, does not compel a finding of this mitigating factor. Cooper v. State, 492 So.2d 1059, 1062 (Fla. 1986).
Here, despite Brown's claim that he smoked crack cocaine on the night of the murder and the existence of some evidence of alcohol consumption, there was no evidence that Brown was actually intoxicated at the time of the murder or that his capacity to conform his conduct to the requirements of the law was substantially impaired. To the contrary, the evidence indicates that Brown was coherent at the time of the murder and knew what he was doing. As the trial court found, "the defendant discussed murdering the victim with the codefendant," he deliberately chose a knife rather than a firearm, "the defendant was able to stab the victim many times," and he searched the apartment for money and car keys before absconding with the victim's truck. We note, however, that despite the lack of sufficient evidence to establish this statutory mitigator, the trial court considered Brown's consumption of drugs and alcohol and found that it supported a nonstatutory mitigating factor. In light of the above evidence, we cannot say the trial court abused its discretion in rejecting this statutory mitigating factor. Accordingly, we find no error.
See also Banks v. State, 700 So.2d 363, 368 (Fla.1997). In this case, there was similar competent, substantial evidence supporting the trial court's determination of the proposed mitigation in the evidence which demonstrated how the murder was committed and in the appellant's actions after the murder was committed. The decision as to whether a mitigating circumstance has been established is within the trial court's discretion. See Blackwood v. State, 777 So.2d 399, 409 (Fla.2000); see also San Martin v. State, 705 So.2d 1337, 1347-48 (Fla.1997) (affirming trial court's rejection of extreme emotional disturbance and substantially diminished capacity mitigator, despite expert testimony in support of such mitigation, where evidence in the record showed purposeful conduct which contradicted such mitigation); Johnson v. State, 608 So.2d 4, 13 (Fla.1992) (affirming rejection of extreme emotional disturbance and substantially diminished capacity mitigators where Court found there was "too much purposeful conduct for the court to have given any significant weight to Johnson's alleged drug intoxication, self-imposed disability that the facts show not to have been a mitigator in this case"); Preston, 607 So.2d at 411 (affirming rejection of extreme emotional disturbance and substantially diminished capacity mitigators in spite of defendant's presentation of expert evidence in support of mitigators where trial court based its decision on competent, substantial evidence of purposeful conduct in committing murder).
Even if we did find that the trial court erred in the weighing and evaluation of the mitigation which was proposed, we would find any such error in respect to the mitigation presented to be harmless beyond a reasonable doubt. The aggravators in this case patently overwhelm the mitigation in this record.

II. ISSUE TWELVE
In his twelfth claim, Bowles argues that the trial court erred in allowing Corporal *1184 Jan Edenfield to testify about the internal injuries Bowles was convicted of inflicting on his 1982 sexual assault victim.[1] We disagree.
During penalty proceedings, it is appropriate to introduce details of a prior violent felony conviction in the form of hearsay testimony so long as the defendant has a fair opportunity to rebut. See § 921.141(1), Fla. Stat. (1994); Hudson v. State, 708 So.2d 256, 261 (Fla.1998) ("[W]e find no error by the trial court in connection with the testimony of Officer Bush, who described the circumstances of the sexual assault for which Hudson had previously been convicted."); see also Rodriguez v. State, 753 So.2d 29, 44-45 (Fla. 2000) (reaffirming our precedent allowing neutral witness to give hearsay testimony as to details of prior violent felony). In the present case, Bowles had the opportunity to rebut hearsay presented by the State. That Bowles did not or could not rebut this testimony does not make it inadmissible.
Even if we were to find error, any error in Edenfield's testimony about this prior violent felony is harmless because (1) the certified copy of the conviction itself conclusively establishes the aggravator; and (2) the strong aggravators in this case overwhelmingly outweigh the mitigation. See Rodriguez, 753 So.2d at 45.

III. PROPORTIONALITY
As death is a unique punishment, it is necessary to engage in a proportionality review to consider the totality of the circumstances in a case and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances. See Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990). Upon review, we find the death sentence to be proportional when compared to others where the death sentence has been imposed. See Brown v. State, 721 So.2d 274 (Fla.1998) (affirming death penalty where evidence established four aggravators including prior violent felony, murder committed during robbery and for pecuniary gain (merged), HAC, and CCP, balanced against two nonstatutory mitigators of an abusive family background and drug and alcohol abuse); Guzman, 721 So.2d at 1155 (death sentence proportionate where four aggravators were found, including HAC, prior violent felony, murder committed in the course of a robbery, and for the purpose of avoiding arrest, and little nonstatutory mitigation was found); Hauser v. State, 701 So.2d 329 (Fla.1997) (death sentence proportionate where victim was strangled and trial court found three aggravators of HAC, CCP, and pecuniary gain, balanced against one statutory mitigator and four nonstatutory mitigators); Whitton v. State, 649 So.2d 861 (Fla.1994) (finding death sentence proportionate where victim was beaten to death and trial court found five aggravators, including HAC, pecuniary gain, prior violent felony, committing the crime while on parole, and committing the crime to avoid arrest, balanced against nine nonstatutory mitigators).

IV. CONCLUSION
We therefore affirm the sentence of death.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS, and QUINCE, JJ., concur.
ANSTEAD and PARIENTE, JJ., concur in result only.
NOTES
[1] Corporal Jan Edenfield testified: "According to the doctors they said that there was tearing and lacerations inside both the rectum and the vagina."