[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13150-P
_____

D.C. Docket No. 3:19-cv-936-J-32JBT

GARY RAY BOWLES,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

Before ED CARNES, Chief Judge, TJOFLAT, and MARTIN, Circuit Judges.

ED CARNES, Chief Judge:

Gary Ray Bowles is a Florida death row inmate scheduled to be executed on

August 22, 2019, at 6:00 p.m.  On August 14, 2019 he filed a habeas petition under

28 U.S.C. § 2254 in the United States District Court for the Middle District of Florida.  He claimed that the Eighth Amendment prohibits the State from executing him because he is intellectually disabled.  The district court dismissed the petition for lack of jurisdiction because it is Bowles' second § 2254 petition and he did not obtain this Court's authorization before filing it.  On August 19, 2019, four days before his scheduled execution, Bowles appealed the district court's order and filed an emergency motion for a stay of execution in this Court.  We deny the motion for a stay of execution pending appeal.

## I.  PROCEDURAL HISTORY

We have set out the facts of Bowles' crimes in our order denying his motion for a stay of execution based on his §1983 case.  See Bowles v. DeSantis, No. 19-12929-P, slip op. at 3–7 (11th Cir. Aug. 19, 2019).

### A.  Sentencing, Re-Sentencing, And Bowles' Direct Appeals

In November of 1994 Bowles murdered Walter Hinton by dropping a 40-pound concrete block on his head while Hinton was sleeping.  Bowles v. State, 716 So. 2d 769, 770 (Fla. 1998) (per curiam).  Bowles pleaded guilty to the crime and was sentenced to death.  Id.  The Florida Supreme Court affirmed the conviction but vacated the death sentence because of an evidentiary error at the original sentence proceeding.  Id. at 773.  On remand, a jury unanimously recommended death and the trial court again imposed that sentence.  Bowles v. State, 804 So. 2d

2

1173, 1175 (Fla. 2001) (per curiam).  This time the Florida Supreme Court affirmed the sentence.  Id. at 1184.  The United States Supreme Court denied certiorari on June 17, 2002, and Bowles' conviction and death sentence became final.  See Bowles v. Florida, 536 U.S. 930 (2002) (mem.).

## B.  First State Postconviction Motion

After the conclusion of his direct appeals, Bowles sought relief in state postconviction proceedings under Rule 3.851 of the Florida Rules of Criminal Procedure.  See Bowles v. State, 979 So. 2d 182, 184 (Fla. 2008) (per curiam).  He filed his first collateral motion on August 29, 2003, asserting claims of ineffective assistance of counsel, improper jury instructions, and the unconstitutionality of Florida's death penalty scheme.  Id. at 186 & n.2.  In one of the claims he said that his trial counsel were ineffective because they failed to present an expert witness at his sentence hearing to discuss various mitigating factors related to his mental health.  See id. at 186–87.  He admitted that his counsel had retained a psychologist, Dr. Elizabeth McMahon, to evaluate him, but argued that the lawyers were ineffective because they did not have her testify.  Id. at 187.

The postconviction trial court held an evidentiary hearing and admitted the deposition testimony of Dr. McMahon.  Id.  She stated that Bowles was "probably not working with what we would say is an intact brain" and that he had "some very mild dysfunction."  Id.  But she also said that Bowles had told her of three

3

additional murders he had committed.  Id.  She explained that Bowles' trial counsel made the strategic decision not to have her testify so that she would not be asked about those additional murders on cross-examination.  Id.  The postconviction court denied Bowles' motion, and the Florida Supreme Court affirmed.  Id. at 187–89, 94.

## C.  First Federal Habeas Petition

Bowles filed his first petition for habeas corpus relief under 28 U.S.C. § 2254 in federal district court on August 8, 2008.  See Petition, Bowles v. Sec'y, Dep't of Corr, 3:08-cv-791 (M.D. Fla. Aug. 8, 2008), ECF No. 1.  He raised ten grounds for relief.  Id.  None of them involved an intellectual disability claim based on the Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304 (2002). The district court denied the petition but granted Bowles a certificate of appealability on one issue based on the State's use of peremptory challenges at the resentencing trial.  See Order, Bowles v. Sec'y, Dep't of Corr, 3:08-cv-791 (M.D. Fla. Dec. 23, 2009), ECF No. 18.  This Court affirmed the district court's denial of relief, see Bowles v. Sec'y, Dep't of Corr, 608 F.3d 1313, 1317 (11th Cir. 2010), and the United States Supreme Court denied Bowles' petition for a writ of certiorari, see Bowles v. McNeil, 562 U.S. 1068 (2010) (mem.).

4

### D.  Second and Third State Postconviction Motions

In March 2013 Bowles brought a successive Rule 3.851 postconviction motion in Florida state court, raising two claims of ineffective assistance of appellate counsel based on the Supreme Court's decision in Martinez v. Ryan, 566 U.S. 1 (2012).  The postconviction trial court denied that motion in July 2013 and Bowles did not appeal.  See Order Denying Defendant's Successive Motion to Vacate Judgment of Conviction and Sentence, State v. Bowles, No. 16-1994-CF-012188-AXXX-MA, (Fla. 4th Cir. Ct. Jul. 17, 2013), Doc. D1573.

About four years later, on June 14, 2017, Bowles filed another successive motion for postconviction relief in Florida state court.  This one was based on the Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016).  The state trial court denied that motion and the Florida Supreme Court affirmed.  See Bowles v. State, 235 So. 3d 292, 292–93 (Fla. 2018) (per curiam), cert. denied, Bowles v. Florida, 139 S. Ct. 157 (2018) (mem.).

### E.  Fourth State Postconviction Motion

Bowles filed his fourth motion for postconviction relief in Florida state court on October 19, 2017.  That motion raised a single claim of intellectual disability based on the Supreme Court's decisions in Moore v. Texas, 137 S. Ct. 1039 (2017), Hall v. Florida, 572 U.S. 701 (2014), and Atkins v. Virginia, 536 U.S. 304 (2002).  Bowles amended his intellectual disability claim on July 1, 2019, after the

5

Governor denied his clemency application and set an execution date for August 22, a little more than seven weeks later.  In his amended motion Bowles asserted that he "is now, and has always been, an intellectually disabled person."  As a result, he claimed, his death sentence must be vacated because the Supreme Court in Atkins had created a "categorical rule" making intellectually disabled offenders "ineligible for the death penalty."

The Florida postconviction trial court summarily denied the motion as untimely and the Florida Supreme Court affirmed.  See Bowles v. State, Nos. SC19-1184 & SC19-1264, 2019 WL 3789971, at *1–3 (Fla. Aug. 13, 2019).  The Florida Supreme Court also denied Bowles' habeas claim that the death penalty is cruel and unusual punishment and is barred by the Eighth Amendment of the United States Constitution.  Id. at *3–4.  Bowles then filed a petition for a writ of certiorari in the United States Supreme Court and asked that Court for a stay of execution.  See Bowles v. State, Nos. 19-5617 & 19A183 (U.S. Aug. 16, 2019).

### F.  Second Federal § 2254 Petition And Motion To Stay

On August 14, 2019, Bowles filed his second 28 U.S.C. § 2254 petition in federal district court, this time raising his claim of intellectual disability.  He also filed a motion for a stay of execution.  The district court dismissed the petition for lack of subject matter jurisdiction.  It concluded that because Bowles had already filed a § 2254 petition in 2008, he could not file another one without first obtaining

6

this Court's authorization, which he had not done.  The court also denied Bowles'

motion for a stay of execution.  Bowles appealed the district court's dismissal of

his habeas petition and has moved this Court for an emergency stay of execution

"to allow for full and fair consideration" of his appeal.

## II.  DISCUSSION

We may grant a stay of execution only if Bowles can establish that: "(1) he

has a substantial likelihood of success on the merits; (2) he will suffer irreparable

injury unless the injunction issues; (3) the stay would not substantially harm the

other litigant; and (4) if issued, the injunction would not be adverse to the public

interest."  Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011).  The "most

important question concerning a stay" is whether Bowles can show a substantial

likelihood of success on the merits.  Jones v. Comm'r, Ga. Dep't of Corr., 811 F.3d

1288, 1292 (11th Cir. 2016).  For the reasons articulated in the district court's well-

reasoned order, he cannot.

### A.  The District Court's Dismissal Of Bowles' § 2254 Petition

The district court concluded that Bowles' present § 2254 petition is "second

or successive" under the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) and dismissed it for lack of jurisdiction because he did not obtain this

Court's authorization before filing it.  A jurisdictional ruling on a petition for

habeas corpus is reviewed de novo on the merits.  See Patterson v. Sec'y, Fla.

7

Dep't of Corr., 849 F.3d 1321, 1324 (11th Cir. 2014) (en banc) ("We review de novo whether a petition for a writ of habeas corpus is second or successive.").[1]

The district court was right to dismiss Bowles' § 2254 petition for lack of jurisdiction. Bowles filed his first § 2254 petition in the district court in 2008. It denied the petition on the merits and this Court affirmed. Bowles, 608 F.3d at 1315 (11th Cir. 2010). That made any later § 2254 petitions Bowles filed subject to AEDPA's restrictions on second or successive petitions. One of those restrictions is that "[b]efore a second or successive application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). But Bowles did not come to this Court for authorization to file his petition. Instead, he filed his second habeas petition directly in the district court. As a result, the district court was required to dismiss the petition for lack of jurisdiction, and that's what it did. See Burton v. Stewart, 549 U.S. 147, 157 (2007) (holding that a district court must dismiss a petition "for lack of jurisdiction" if the prisoner does not receive authorization from the court of appeals before filing a second or successive petition in the district court); Lambrix

---

[1] Bowles does not need a certificate of appealability to appeal from the district court's order because that order is not "a final order in a habeas corpus proceeding" within the meaning of 28 U.S.C. § 2253(c). Hubbard v. Campbell, 379 F.3d 1245, 1247 (11th Cir. 2004). Instead, the decision is a final order dismissing the petition for lack of subject matter jurisdiction, so we can review that order under 28 U.S.C. § 1291. Id.

8

v. Sec'y, Dep't of Corr., 872 F.3d 1170, 1180 (11th Cir. 2017) (stating that when a petitioner fails to obtain authorization from the court of appeals to file a second or successive habeas petition, "the district courts lack jurisdiction to consider the merits of the petition"); Farris v. United States, 333 F.3d 1211, 1216 (11th Cir. 2003) ("Without authorization, the district court lacks jurisdiction to consider a second or successive petition.").

In his motion to stay Bowles argues that he "can make a strong showing that he is likely to succeed in his argument that his Atkins claim is not successive," but he does not elaborate on what that showing would be. In his reply brief he clarified that he is relying on the arguments he made before the district court for that showing, and what Bowles argued there is that the clear statutory command of § 2244(b)(3)(A) does not apply to him because his petition is not really a second or successive one under Panetti v. Quarterman, 551 U.S. 930 (2007). But that decision does not apply to Bowles' petition.

In Panetti a petitioner brought a claim under Ford v. Wainwright, 477 U.S. 399 (1986), contending that his mental illness at the time of his scheduled execution meant that the State could not execute him. 551 U.S. at 941–42. The Supreme Court held that the petition, though the inmate's second one, did not trigger AEDPA's "second or successive" restrictions because a Ford claim does not become ripe until a date is set for the prisoner's execution, which may occur

9

after he has filed his first federal habeas petition.  Id. at 947.  The Court held that "[t]he statutory bar on 'second or successive' applications does not apply to a Ford claim brought in an application filed when the claim is first ripe."  Id.

We have explained that: "The Panetti case involved only a Ford claim, and the Court was careful to limit its holding to Ford claims.  The reason the Court was careful to limit its holding is that a Ford claim is different from most other types of habeas claims."  Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1259 (11th Cir. 2009) (citation omitted).  Unlike most other types of claims, a Ford claim of mental incompetence can arise at any point in a prisoner's life and is usually "not ripe until after the time has run to file a first federal habeas petition."  Panetti, 551 U.S. at 943.  The Supreme Court's narrow reasoning created a narrow holding that is "notably limited . . . to incompetency claims."  In re Davis, 565 F.3d 810, 820 n.6 (11th Cir. 2009) (per curiam).

Bowles is not seeking to raise a Ford claim of mental incompetence to be executed.  Instead, he wants to raise an Atkins claim that he cannot be executed because he is intellectually disabled.  But Panetti "d[id] not involve Atkins or [intellectual disability]."[2]  Hill v. Humphrey, 662 F.3d 1335, 1359 (11th Cir. 2011) (en banc).  And an Atkins claim of intellectual disability is not like a Ford claim of

_____

[2]  Like the Supreme Court, "[p]revious opinions of this Court have employed the term 'mental retardation.'"  Hall v. Florida, 572 U.S. 701, 704 (2014).  "This opinion uses the term 'intellectual disability' to describe the identical phenomenon."  Id.

10

mental incompetence.  The district court explained the difference: "Intellectual disability at the time the crime is committed (Atkins) is different from incompetency at the time of execution (Ford).  The first renders an inmate ineligible for a death sentence; the second renders a death-sentenced inmate ineligible for execution."

Under Supreme Court precedent, not to mention by medical definition, the onset of intellectual disability in an Atkins claim "must occur before age 18 years." Atkins, 536 U.S. at 308 n.3 (2002); see Hall v. Florida, 572 U.S. 701, 710 (2014) ("[T]he medical community defines intellectual disability according to three criteria . . . [including] onset of [intellectual and adaptive] deficits during the developmental period."); see also Carroll v. Sec'y, DOC, 574 F.3d 1354, 1369 (11th Cir. 2009) (stating that a prisoner bringing an intellectual disability claim must "demonstrate significantly subaverage general intellectual functioning along with deficits in adaptive behavior and an onset before age 18.") (emphasis omitted) (quotation marks omitted).  As a result, "[t]he Supreme Court's holdings regarding Ford incompetence-to-be-executed claims cannot be imported, wholesale, into the law governing Atkins claims."  Busby v. Davis, 925 F.3d 699, 713 (5th Cir. 2019); see Davis v. Kelly, 854 F.3d 967, 971–72 (8th Cir. 2017) (holding that "Panetti . . . has no force or applicability to [the prisoner's Atkins] claim" because

11

Atkins focuses on the prisoner's culpability at the time of the crime, whereas Ford concerns the prisoner's competency at the time of his execution).

That also means that, unlike a Ford claim, an Atkins claim "can be and routinely [is] raised in initial habeas petitions." Tompkins, 557 F.3d at 1260; see, e.g., Hill, 662 F.3d at 1361 (denying petitioner's Atkins intellectual disability claim raised in first federal habeas petition); Powell v. Allen, 602 F.3d 1263, 1268, 1272 (11th Cir. 2010) (same); Carroll, 574 F.3d at 1366–67 (same). If Bowles has an intellectual disability now, then he had an intellectual disability when he filed his first federal habeas petition in 2008. That was six years after the Supreme Court decided Atkins. But Bowles did not include an Atkins claim in that petition. That makes his current petition second or successive under § 2244(b)(3)(A), and given the lack of authorization from this Court the district court was right to dismiss it for lack of jurisdiction. See Burton, 549 U.S. at 157.

B. Bowles' § 2241 Petition And Miscarriage Of Justice Arguments

Bowles raised three other arguments before the district court for why his petition should not be dismissed. First, he argued that the court should grant him relief because "any procedural obstacle to the consideration of a claim of intellectual disability must cede to the categorical protections of the Eighth Amendment." "Any procedural obstacle" here being the AEDPA's restrictions on second or successive applications. The restrictions of the AEDPA apply to

12

constitutional claims, and "[n]othing in the Constitution requires otherwise." Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands, 461 U.S. 273, 292 (1983); see also Gonzalez v. Thaler, 565 U.S. 134, 138, 154 (2012); Pace v. DiGuglielmo, 544 U.S. 408, 419 (2005).  We decline Bowles' invitation to effectively declare part of the AEDPA unconstitutional.

Second, Bowles argued in the district court that he could overcome any AEDPA restrictions on second or successive petitions because a fundamental miscarriage of justice would occur if he were executed because he is "actually innocent" of the death penalty.  He relied on the Supreme Court's decision in Sawyer v. Whitley, 505 U.S. 333 (1992), which involved the procedural default doctrine.  But we have rejected that argument and "made clear that AEDPA forecloses the Sawyer exception in all circumstances, including § 2254 challenges to state death sentences."  In re Hill, 715 F.3d 284, 301 (11th Cir. 2013); see In re Hill, 777 F.3d 1214, 1225 (11th Cir. 2015) (per curiam) (stating that "Hill's argument that Sawyer provides an equitable exception to the restriction on successive § 2254 petitions is similarly foreclosed" because "the Sawyer actual-innocence-of-the-death-penalty exception did not survive the AEDPA").

Third, Bowles also argued in the district court that he should be allowed to bring his petition for a writ of habeas corpus under 28 U.S.C. § 2241.  But we have held many times that "a prisoner collaterally attacking his conviction or sentence

13

may not avoid the various procedural restrictions imposed on § 2254 petitions . . . by nominally bringing suit under § 2241." Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351 (11th Cir. 2008); see also Johnson v. Warden, Ga. Diagnostic & Classification Prison, 805 F.3d 1317, 1323 (11th Cir. 2015) (per curiam) ("[Petitioner's] position — that a habeas petitioner can evade any and all of the [AEDPA] restrictions set out in §§ 2244 and 2254 by the simple expedient of labeling the petition as one filed under § 2241 — has no merit whatsoever."). So that avenue is closed to Bowles as well. Bowles has not shown a substantial likelihood of success on the merits of his appeal.[3]

## III. CONCLUSION

We **DENY** Bowles' emergency motion for a stay of execution.

---

[3] In view of our holding, we have no occasion to address the Respondents' argument that equitable considerations relating to the timing of Bowles' filing of his latest petition also counsel in favor of denying his motion for a stay of execution.

14

MARTIN, Circuit Judge, concurring in the judgment:

The Majority correctly describes this Circuit's precedent, which renders Mr. Bowles's 28 U.S.C. § 2254 petition "second or successive" under the Antiterrorism and Effective Death Penalty Act of 1996. Mr. Bowles did not first seek permission from this Court before filing his petition with the District Court, so the District Court did not have jurisdiction over it. See Burton v. Stewart, 549 U.S. 147, 157, 127 S. Ct. 793, 799 (2007) (holding a district court is without jurisdiction to entertain a second or successive petition filed without authorization from the Court of Appeals). I therefore join the ruling of the Majority Opinion that the District Court did not err in dismissing Mr. Bowles's petition. See id.

15