**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-3

TIMOTHY RICHARDSON,

Petitioner - Appellee,

v.

EDWARD THOMAS, Warden, Central Prison, Raleigh, North Carolina,

Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:08-hc-02163-BO)

Argued: January 30, 2019                                        Decided: July 12, 2019

Before MOTZ and KEENAN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Vacated and remanded with instructions by published opinion. Senior Judge Traxler wrote the opinion, in which Judge Motz and Judge Keenan concurred.

**ARGUED:** Jonathan Porter Babb, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellant. Kenneth Justin Rose, KEN ROSE, Durham, North Carolina, for Appellee. **ON BRIEF:** Josh Stein, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH CAROLINA, Raleigh, North Carolina, for Appellant. Stanley F. Hammer, WYATT, EARLY, HARRIS & WHEELER, LLP, High Point, North Carolina, for Appellee.

TRAXLER, Senior Circuit Judge:

Timothy Richardson filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking to reopen the district court's final judgment dismissing his Eighth Amendment, intellectual disability claim on the merits under 28 U.S.C. § 2254(d). The motion was based upon the United States Supreme Court's subsequent decision in *Hall v. Florida*, 572 U.S. 701 (2014). The district court granted the motion, but certified this interlocutory appeal by the State under 28 U.S.C. § 1292(b). Because Richardson's motion is the functional equivalent of a § 2254 petition, we vacate the district court's order and remand with instructions to dismiss the motion.

## I.

In 1995, a North Carolina jury convicted Richardson of kidnapping and murder. He was sentenced to death. His convictions and sentences were affirmed on direct appeal, *State v. Richardson,* 488 S.E.2d 148 (N.C. 1997), and the Supreme Court denied certiorari, *Richardson v. North Carolina,* 522 U.S. 1056 (1998).[1]

In 2002, Richardson filed a post-conviction motion for appropriate relief ("MAR") in North Carolina state court. He alleged that he suffered from an intellectual disability that rendered his capital sentence violative of the Eighth Amendment. *See Atkins v. Virginia*, 536 U.S. 304 (2002). To succeed on his claim, Richardson was required to demonstrate that he had (1) *"significantly subaverage general intellectual functioning,"*

---

[1] The underlying facts and procedural history of this case are fully set forth in our prior decisions in *Richardson v. Thomas,* 718 Fed. App'x 192 (4th Cir. 2018), and *Richardson v. Branker,* 668 F.3d 128 (4th Cir. 2012).

2

defined as an IQ "of 70 or below," and (2) *"significant limitations in adaptive functioning,"* defined as "[s]ignificant limitations in two or more of [ten] adaptive skill areas." N.C. Gen. Stat. § 15A-2005(a)(1), (2) (2001). "An intelligence quotient of 70 or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is evidence of significantly subaverage general intellectual functioning," under the statute, but "it is not sufficient, without evidence of significant limitations in adaptive functioning and without evidence of manifestation before the age of 18, to establish that the defendant is mentally retarded." N.C. Gen. Stat. § 15A-2005(a)(2).

In 2005, the state MAR court held a full evidentiary hearing on Richardson's intellectual disability claim. The MAR court considered four IQ scores, but only two were admissible as qualifying scores—an IQ score of 73 in 1995, and an IQ score of 74 in 2004. The court also considered expert testimony regarding the effect the standard error of measurement ("SEM"), Flynn effect and practice effect may have had upon Richardson's IQ scores, as well as lay and expert testimony about his limitations in adaptive functioning. The state MAR court found that Richardson had failed to establish either of the requisite prongs and denied his claim on the merits.

In his petition for a writ of certiorari to the North Carolina Supreme Court, Richardson argued that the MAR court, in deciding the first prong of the statutory test, "employ[ed] an overly restrictive construction of § 15A-2005, one that is contrary to the Eighth Amendment as interpreted by the United States Supreme Court's decision in

3

*Atkins v. Virginia."* J.A. 420. Specifically, Richardson argued that the MAR court "fail[ed] to take into consideration the Flynn effect, the practice effect or the standard error of measurement," J.A. 432, and erred in "consider[ing] only the numerical value obtained on [the] two [qualifying] IQ tests," J.A. 434. With regard to the second prong of the statutory test, Richardson argued that the MAR court improperly assessed his adaptive functioning and rendered factual findings that were contrary to the evidence. The Supreme Court of North Carolina denied review. *See State v. Richardson*, 667 S.E.2d 272 (N.C. 2008).

Richardson then filed an application for federal habeas relief under 28 U.S.C. § 2254(d), challenging the reasonableness of the state court's adjudication of his intellectual disability claim. With regard to the first prong—the state court's assessment of Richardson's general intellectual functioning—Richardson again argued that the state court had "employ[ed] an overly restrictive construction of § 15A-2005, one that is contrary to the Eighth Amendment as interpreted by the United States Supreme Court in *Atkins v. Virginia."* J.A. 777. Richardson argued that the "state court appear[ed] to have given weight only to the numbers obtained on the [IQ] tests, rather than interpreting all of the data to arrive at [Richardson's] true IQ," J.A. 754, and failed to adjust the scores based upon "the Flynn effect, the practice effect, and the standard error of measurement," J.A. at 743. With regard to the second prong—the state court's determination that he had failed to prove significant limitations in two or more of the ten adaptive skill areas—

4

Richardson argued that the state court's findings were based on an unreasonable determination of the facts in light of the evidence presented.

The district court reviewed the evidence that Richardson presented to the state court, including the expert testimony on the effect of the SEM, Flynn effect and practice effect on IQ scores, and the lay and expert testimony regarding Richardson's adaptive skills. Of particular relevance to this appeal, the district court observed that Dr. Hazelrigg, the mental health expert for the State, had "found petitioner was impaired in some of the adaptive skills areas, but ultimately concluded [he] was not mentally retarded." *Richardson v. Branker,* 769 F. Supp. 2d 896, 926 (E.D.N.C. 2011).

Based upon this evidence, the district court held that the state court's determination that Richardson had failed to prove significant subaverage intellectual functioning was not an unreasonable application of the law in *Atkins* or an unreasonable determination of the facts in light of the evidence presented. In doing so, the district court considered all of the evidence—including the testimony regarding the SEM, the practice effect, and the Flynn effect on Richardson's IQ scores, and testimony regarding Richardson's adaptive skills and intellectual disability—and held that Richardson:

> has not shown the state court clearly erred or acted unreasonably under the circumstances so as to warrant this court substituting its judgment. While this court does not discount factors such as the standard error of measurement, Flynn effect, or practice effect in assessing I.Q. scores, there is no requirement under N.C. Gen. Stat. § 15A-2005 for a court to adjust a defendant's IQ scores *downward* for such factors. The state court heard all of the evidence, including testimony on each of these factors, and *was entitled to consider and weigh these factors in assessing whether petitioner carried his burden of showing an I.Q. of 70 or below*. Notably, in assessing petitioner's I.Q. score of 73, Dr. John Gorman . . . concluded petitioner was

5

not mentally retarded, but was functioning at the borderline level of intellect. Similarly, Dr. Hazelrigg . . . concluded petitioner was not mentally retarded and is not now mentally retarded.

*Id.* at 927 (emphasis added). "Ultimately, in light of all of the evidence presented, including [the IQ test scores] and the expert opinions of Drs. Gorman and Hazelrigg that petitioner was not mentally retarded," the district court held that Richardson "cannot show the MAR court acted unreasonably in determining [Richardson] failed to show he had significantly subaverage general intellectual functioning." *Id.* And because Richardson was required to show both significantly subaverage general intellectual functioning *and* significant limitations in two or more of the ten adaptive skill areas, it was unnecessary for the court to address Richardson's separate challenges to the reasonableness of the state MAR court's factual findings that Richardson had failed to establish significant limitations in two or more adaptive skill areas. *See id.* at 927 & n.14.

We affirmed. *See Richardson v. Branker*, 668 F.3d 128 (4th Cir. 2012). Applying the deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we held that "the MAR court's denial of Richardson's motion on the basis that he is not mentally retarded was neither based on an unreasonable determination of the facts nor an unreasonable application of the Supreme Court's decision in *Atkins.*" *Id.* at 153.

Like the district court, we were "not persuaded by Richardson's . . . argument that the MAR court should have adjusted *downward* his IQ scores of 73 and 74 due to the 'Flynn effect' and the 'practice effect.'" *Id.* at 151 (emphasis added). Although noting that the MAR court held an evidentiary hearing and received evidence concerning these

6

factors, "the MAR court declined to adjust Richardson's I.Q. scores on the basis of those theories." *Id.* at 152. Thus, our doing so would have "require[d] us to engage in a de novo review of the MAR court's decision [and] make our own factual findings." *Id.* This, we held, "is precisely the result that is forbidden under AEDPA, which requires deference and respect for a state court's adjudication of a claim on the merits." *Id.* We also agreed "with the district court's observation that there is no *requirement* [under *Atkins* or North Carolina law] for a court to adjust a defendant's I.Q. scores downward for such factors." *Id.* (internal quotation marks omitted); *see also Green v. Johnson*, 515 F.3d 290, 300 n.2 (4th Cir. 2008) (observing that "neither *Atkins* nor Virginia law appear[ed] to require expressly that [the Flynn effect or the standard error of measurement] be accounted for in determining mental retardation status"). And because the MAR court had not unreasonably concluded that Richardson failed to establish the first prong of the test, we too saw no need to address Richardson's separate challenges to the reasonableness of the state court's factual findings on the second prong. The United States Supreme Court denied Richardson's petition for certiorari. *See Richardson v. Branker*, 568 U.S. 948 (2012).

## II.

Several years later, the United States Supreme Court issued its decision in *Hall v. Florida*. In *Hall,* the state prisoner obtained direct review in the United States Supreme Court of the Florida supreme court's rejection of his intellectual disability claim under *Atkins*. *See Hall*, 572 U.S. at 707. Hall argued that the Florida supreme court had

7

interpreted Florida's statute too "rigid[ly]" to comply with *Atkins'* prohibition of the execution of the intellectually disabled, because it had imposed a bright-line IQ cut-off score of 70 that totally foreclosed "all further exploration of intellectual disability," including consideration of the SEM and evidence of adaptive functioning deficits. *Id.* at 704.

In *Atkins,* the Supreme Court had left "to the States the task of developing appropriate ways to enforce the constitutional restriction upon their execution of the sentences." *Atkins,* 536 U.S. at 317 (internal quotation marks and alteration omitted). In *Hall,* however, the Supreme Court held that States did not "have complete autonomy to define intellectual disability as they wished," or else "the Court's decision in *Atkins* could become a nullity." *Hall,* 572 U.S. at 720. The Court held that Florida's application of its intellectual disability statute as imposing a bright-line, cut-off score was indeed too restrictive, under applicable clinical definitions of intellectual disability, to satisfy the Eighth Amendment.

Armed with *Hall,* Richardson returned to state court, arguing that *Hall* should be applied retroactively to his claim, and reasserting his prior claim that North Carolina, like Florida, had interpreted its intellectual disability statute too rigidly in 2005 when it first considered his claim. Richardson argued that North Carolina had also applied a "strict cutoff" IQ score of 70, J.A. 1142, and that it too had "failed to permit consideration of other evidence relied upon by experts in the field including the standard error of measurement, the practice effect, the Flynn effect, and clinically-appropriate assessment

8

measures of adaptive behavior." J.A. 1143. In other words, Richardson made essentially the same argument that he had previously made to the North Carolina Supreme Court, the district court, this court, and the United States Supreme Court.

The state MAR court denied Richardson's request that it revisit its prior denial of his claim, concluding that the claim was procedurally barred because it had already been raised and adjudicated on the merits in the previous state court proceedings, and that *Hall* was not retroactively applicable to cases on collateral review. *See* N.C. Gen. Stat. 15A-1419(a)(2).

In the alternative, the court held that *Hall* had no effect upon its prior adjudication of Richardson's intellectual disability claim. First, and unlike in Florida, "[t]he North Carolina Supreme Court has not interpreted North Carolina's statute to preclude consideration of the [SEM] or to limit the introduction of evidence if the threshold showing of an IQ score of 70 or below has not been met." J.A. 1234. Accordingly, the court held, North Carolina's statute could be and had been "interpreted consistently with *Atkins.*" J.A. 1234.

Second, and unlike Hall, Richardson *had* been "allowed to present evidence of his alleged deficits in adaptive functioning in a full evidentiary hearing without restriction," as well as evidence "on the standard error of measurement," J.A. 1234, and the state court had "considered all of Richardson's IQ test scores, without limitation, as well as evidence of his alleged limitations in adaptive functioning." J.A. 1234-35.

> At his evidentiary hearing, Richardson was allowed to present evidence and argument on the standard error of measurement. The State's expert witness

9

> also testified regarding the standard error of measurement. Unlike in *Hall,* this Court did not restrict the evidence presented about the application of the standard error of measurement and has already considered that evidence.
>
> Richardson was also not precluded from presenting evidence of his alleged limitations in adaptive functioning. The State argued at the outset of the hearing that Richardson should have to show an IQ score of 70 or below before being granted an opportunity to present evidence at the hearing. After rejecting the State's argument to limit the presentation, this Court proceeded to conduct a full evidentiary hearing wherein Richardson was allowed to present evidence of alleged significant limitations in adaptive functioning,

J.A. 1235. Thus, the court held that *Hall* did not alter the court's prior determination that Richardson was not intellectually disabled and, by allowing Richardson to present evidence on the SEM and his adaptive functioning, it had, in effect, "already interpreted North Carolina's law consistently with *Hall.*" J.A. 1235.

Finally, the state court rejected Richardson's intellectual disability claim again on the merits, and even in light of his proffered new evidence. The court held that "Richardson has provided no evidence to support this Court finding him intellectually disabled." J.A. 1235. In particular, Dr. Hazelrigg's opinion that Richardson is not intellectually disabled "remains consistent" with his prior opinion, and "nothing from *Hall v. Florida*, or developments in the field of mental health has affected his conclusion that Richardson is not intellectually disabled." J.A. 1236 (internal quotation marks and alterations omitted).

The North Carolina Supreme Court denied review, *see State v. Richardson,* 782 S.E.2d 736 (N.C. 2016), as did the United States Supreme Court, *see Richardson v North Carolina,* 137 S. Ct. 337 (2016).

10

Having failed to succeed in his efforts to overturn his capital sentence before the state courts in light of the Supreme Court's decision in *Hall*, Richardson returned to federal court and asserted the identical claim. However, he did so in a motion to reopen the court's final judgment in his § 2254 proceedings, under Rule 60(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion and certified this interlocutory appeal. For the reasons that follow, we now vacate the district court's order and remand with instructions to dismiss the motion.

## III.

## A.

AEDPA strictly limits a federal court's authority to grant habeas relief under 28 U.S.C. § 2254 to a state prisoner based upon an alleged violation of his federal constitutional rights. Grounded in principles of comity, the federal courts "shall not" grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

State prisoners are also limited to one round of federal habeas review of their state court convictions, save in two narrow circumstances. "A claim presented in a second or successive habeas corpus application under [28 U.S.C. § 2254] that was presented in a

11

prior application *shall* be dismissed." 28 U.S.C. § 2244(b)(1) (emphasis added). "A claim presented in a second or successive habeas corpus application under [28 U.S.C. § 2254] that was *not* presented in a prior application shall [also] be dismissed unless" the prisoner can show (1) that "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (2) newly discovered facts that, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2) (emphasis added); *see also Gonzalez v. Crosby*, 545 U.S. 524, 529-30 (2005) (Under § 2244(b), "any claim that has already been adjudicated in a previous petition must be dismissed," and "any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence.").

Moreover, jurisdiction to consider the question of whether the prisoner has made a prima facie showing that he satisfies the requirements of § 2244(b)(2) rests exclusively with the federal courts of appeal. *See* 28 U.S.C. § 2244(b)(3). "[B]efore the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions." *Gonzalez*, 545 U.S. at 530; *see also United States v.*

12

*Winestock,* 340 F.3d 200, 205 (4th Cir. 2003). "In the absence of pre-filing authorization, the district court lacks jurisdiction to consider [the] application. . . ." *Id.* at 205.

Generally speaking, Federal Rule of Civil Procedure 60(b) allows a civil litigant "to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez,* 545 U.S. at 528. Rule 60(b)(6), the provision that Richardson relies upon, "permits reopening when the movant shows any reason justifying relief from the operation of the judgment other than the more specific circumstances set out in Rules 60(b)(1)-(5)." *Id.* at 529 (internal quotation marks and alteration omitted). However, the Rule 60(b)(6) motion "must be made within a reasonable time," Fed. R. Civ. P. 60(c)(1), and the movant must "show extraordinary circumstances justifying the reopening of a final judgment," *Gonzalez,* 545 U.S. at 535 (internal quotation marks and alteration omitted).

Due to § 2244(b)'s statutory prohibition against the filing of second or successive habeas petitions, however, the United States Supreme Court has "firmly reined in" the availability of Rule 60(b) to a prisoner who seeks to reopen a final judgment issued in his federal habeas proceedings. *Moses v. Joyner*, 815 F.3d 163, 168 (4th Cir. 2016). In *Gonzalez,* the Supreme Court considered the question of whether a habeas petitioner could ever invoke Rule 60(b) without running afoul of the statutory limitations on the filing of second and successive habeas petitions in § 2244. The Court held that Rule

13

60(b) had a "valid role to play in habeas cases," but it also made clear that this role is a narrow one. *Gonzalez,* 545 U.S. at 534.

The *Gonzalez* analysis of the interplay between § 2244(b) and Rule 60(b) is important, and it reflects the unquestionable primacy of § 2244(b). A habeas petitioner is precluded from utilizing Rule 60(b) to assert a federal habeas "claim" as that term is used in § 2244(b)—that is, "an asserted federal basis for relief from a state court's judgment of conviction." *Gonzalez,* 545 U.S. at 530. A motion that seeks to present a claim of constitutional error that was omitted from the prior habeas petition, a motion that seeks to present newly discovered evidence in support of a claim that was previously denied, or a motion that "contend[s] that a subsequent change in substantive law is a 'reason justifying relief,'" must be dismissed. *Id.* at 531 (quoting Fed. R. Civ. P. 60(b)(6)). "[S]uch a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Id.* at 531.

Thus, "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id.* at 531 (citing 28 U.S.C. § 2244(b)(2)). "The same is true of a Rule 60(b)(2) motion presenting new evidence in support of a claim already litigated. . . ." *Id.* And, allowing such claims to proceed under "Rule 60(b) would impermissibly circumvent the requirement that a

14

successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar." *Id.* at 532 (citing 28 U.S.C. § 2244(b)(3)).

Applying this clear guidance, the determination of whether a Rule 60(b) motion presents a habeas claim is "relatively simple." *Id.* If the Rule 60(b) motion raises a new ground for relief from the prisoner's state court conviction, it must be dismissed. And if the motion "attacks the federal court's previous resolution of a claim *on the merits,*" it must also be dismissed. *Id.*; *see also id.* at 532 n.4 (When the movant asserts "that there exist . . . grounds entitling [him] to habeas corpus relief under 28 U.S.C. § 2254(a) and (d)," or "asserts that a previous ruling regarding one of those grounds was in error," he is seeking to raise a habeas corpus claim in a Rule 60(b) motion.). The narrow role carved out in *Gonzalez* for Rule 60(b) motions in the habeas context, in contrast, allows a district court to reopen nonmerits-based denials or dismissals of a state prisoner's federal habeas petition or claim, which resulted in no federal court having considered the merits of the claim at all. The Rule 60(b) movant is not raising a new habeas corpus claim, or attacking the federal court's previous denial of the claim on the merits, when he "merely asserts that a previous ruling which *precluded* a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* at 532 n.4.

Accordingly, when presented with a Rule 60(b) motion in a habeas proceeding, the district court's *first* inquiry must be to "decide whether [the] Rule 60(b) motion filed by [the] habeas petitioner is a 'habeas corpus application' as [§ 2244(b)] uses that term." *Id.*

15

at 530. "If so, the court must either dismiss the motion for lack of jurisdiction or transfer it to this court so that we may perform our gatekeeping function under § 2244(b)(3)." *Winestock*, 340 F.3d at 207.

B.

By its terms, Richardson's motion "present[ed] a single ground for relief from judgment: he has an intellectual disability that bars the State of North Carolina from executing him." J.A. 1108 (footnote omitted). Richardson asserted that the state court imposed "a bright line cutoff IQ score of 70 or below" when it originally adjudicated his claim, J.A. 1109, and that the state court had "preclud[ed] application of the standard error of measurement in determining whether [his] IQ scores of 73 and 74 satisfied the intellectual disability prong of the statute," J.A. 1108. This is the same claim (and essentially the identical argument) that he presented to the district court in 2011. Richardson's new argument was that the Supreme Court's decision in *Hall* "must be applied retroactively to [his] case," J.A. 1119 n.6, and that the "change in law wrought by *Hall*" was an extraordinary circumstance warranting Rule 60(b)(6) relief from the district court's 2011 final judgment denying his claim on the merits, J.A. 1122.

One can hardly imagine a second or successive habeas application that is so poorly disguised as a Rule 60(b)(6) motion. Richardson's motion was a clear attempt to circumvent AEDPA's restrictions on the filing of a second or successive federal habeas petition based upon a new rule of law, presenting his *Hall* claim to the district court instead of coming first to us. Indeed, when questioned by the district court about the

16

propriety of his Rule 60(b) motion in light of § 2244, Richardson's counsel advised the court that he did not come to the Fourth Circuit first because 28 U.S.C. § 2244(b)(1) precluded him from reasserting his intellectual disability claim in a second or successive habeas application.  Presumably, Richardson's counsel also knew that, regardless of whether Richardson could ultimately succeed on a motion to file a second or successive application based upon a "new rule" in *Hall*, Richardson was statutorily *prohibited* from filing the claim in district court without obtaining prior authorization to do so from this court.  28 U.S.C. § 2244(b)(3).  And, Richardson's counsel did not even argue that Rule 60(b) relief was available because there was a defect in the prior habeas proceedings that had precluded the district court from adjudicating the merits of his intellectual disability claim.

The district court also recognized that Richardson's Rule 60(b) motion "directly attack[ed] th[e] court's merits adjudication [of his intellectual disability claim] in light of *Hall*."  J.A. 1616.  *See Gonzalez*, 545 U.S. at 532 (A Rule 60(b) motion improperly states a habeas claim "if it attacks the federal court's previous resolution of a claim *on the merits*").  However, the district court did not dismiss the Rule 60(b) motion as an unauthorized, successive § 2254 petition, or transfer it to this court for a decision as to whether Richardson should be allowed to file the claim under § 2244(b).  *See Winestock*, 340 F.3d at 207.  Instead, the district court *first* considered whether the Supreme Court's decision in *Hall* should be retroactively applied to cases on collateral review and, after assuming that it should, held that the motion was timely filed and that *Hall* was an

17

extraordinary circumstance for purposes of Rule 60(b)(6). Only then did the district court turn to what should have been the *threshold* inquiry under *Gonzalez*—whether the Rule 60(b) motion attacked the district court's prior resolution of a habeas claim on the merits (or raised an entirely new claim), or merely asserted a procedural defect in the integrity of the original proceedings that had precluded an adjudication on the merits of the claim.

As noted above, this approach to Richardson's Rule 60(b) motion was incorrect, and it led to the district court's erroneous grant of Rule 60(b) relief. When presented with a Rule 60(b) motion to reopen the final judgment in a habeas proceeding, the district court's *first* inquiry is to "decide whether [the] Rule 60(b) motion filed by [the] habeas petitioner is a 'habeas corpus application' as [§ 2244(b)] uses that term." *Gonzalez,* 545 U.S. at 530; *see also Winestock*, 340 F.3d at 207. This makes sense, because until the district court determines whether the Rule 60(b) motion filed by the habeas petitioner is in actuality a disguised § 2244 motion, it cannot determine whether it has jurisdiction to move forward. Only if the district court determines that the motion does not seek an adjudication on the merits of a constitutional claim, or challenge "the federal court's previous resolution of a claim *on the merits*," may the district court proceed to exercise its discretion under Rule 60(b)(6) to decide whether the motion satisfies Rule 60(b)'s requirements of timeliness and extraordinary circumstances. *Gonzalez*, 545 U.S. at 532. The district court compounded this error by concluding that its failure to conduct an evidentiary hearing was a defect in the integrity of the prior proceedings. Even if the failure to conduct an evidentiary hearing on a prior habeas claim could ever be viewed as

a procedural defect, the purported "defect" would not allow the district court to circumvent § 2244(b) in order to readjudicate the merits of a previously-raised claim or to rely upon new Supreme Court precedent in doing so.

To conclude, Richardson's Rule 60(b)(6) motion plainly sought a readjudication of the *merits* of his intellectual disability claim, which he had presented in his prior § 2254 application, based upon the Supreme Court's decision in *Hall*. Because the motion circumvented the restrictions on second or successive habeas petitions set forth in § 2244(b), and this court's exclusive jurisdiction to decide whether such a petition can be filed in the district court, the district court was required to either dismiss the motion or transfer it to this court so that we could consider it under our gatekeeping function under 28 U.S.C. § 2244(b)(3). *See Winestock,* 340 F.3d at 207.

## C.

On appeal, Richardson has raised an entirely new basis for granting Rule 60(b) relief. Richardson argues that the state court "clarified" North Carolina's intellectual disability statute in 2015 (when it ruled upon his *Hall* claim), and that this clarification revealed that the district court misinterpreted state law when it denied his intellectual disability claim in 2011. In other words, Richardson attempts to shoehorn this purported "error" in the district court's rejection of his claim on the merits in 2011 into a plausible argument (under *Gonzalez*) that the district court failed to *resolve* the merits of his intellectual disability claim on the first go round. Again, we disagree.

19

Richardson's new ground for Rule 60(b) relief, raised for the first time on appeal, cannot validate the district court's erroneous exercise of jurisdiction over the Rule 60(b) motion as presented. *Cf. Winestock,* 340 F.3d at 208 (holding that "it would be inappropriate for us to let the decision of the district court stand, because it was entered without jurisdiction"). Nor is it a legitimate, alternative ground for affirming the district court's grant of Rule 60(b) relief. It does not rely upon the same purported defect in the original habeas proceedings, the same clearly-established Supreme Court precedent, or the same change in substantive law that was relied upon by the district court.

Richardson's new ground for Rule 60(b)(6) relief also does not fall within *Gonzalez's* narrow exception to § 2244's limitations. In *Gonzalez,* the Supreme Court provided quite clear guidance for distinguishing between a true Rule 60(b) motion and a disguised § 2254 petition. The Court repeatedly focuses the threshold inquiry on whether the district court denied the habeas petitioner's constitutional claim *on the merits* under § 2254(d), or whether the district court's prior dismissal of the habeas claim was based upon a *procedural* ruling that *precluded* the court from reaching the merits of the constitutional claim under § 2254(d). This quite basic, and understandable, merits/nonmerits distinction permeates the *Gonzalez* opinion, and it does not support Richardson's argument that he can reopen the final judgment denying his federal habeas claim on the merits under § 2254(d), based upon a clarification of substantive law or a subsequently-discovered error. We need not go any further than the language of *Gonzalez* to be sure of that.

20

A Rule 60(b) motion that "contend[s] that a *subsequent change in substantive law* is a 'reason justifying relief' from the previous denial of a claim . . . , although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Gonzalez,* 545 U.S. at 531 (emphasis added). This is because "[a] Rule 60(b) motion based on a purported change in the substantive law governing the claim could be used to circumvent § 2244(b)(2)(A)'s dictate that the only new law on which a successive petition may rely is a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* at 531-32 (internal quotation marks omitted).

A Rule 60(b) motion that asserts that there was an *error* in the district court's prior denial of a constitutional claim on the merits is also a successive habeas petition, and must be dismissed under § 2244(b)(1). *Id.* at 532. As the Supreme Court made clear:

> In most cases, determining whether a Rule 60(b) motion advances one or more "claims" will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify. A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim *on the merits,* since alleging that the court *erred* in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief."

*Id.* (second emphasis added). When a movant asserts a ground for habeas corpus relief under 28 U.S.C. § 2254(a) and (d) or, as in this case, "asserts that a previous ruling regarding one of those grounds was in *error*, he is making a habeas corpus claim." *Id.* at 532 n.4 (emphasis added).

21

Richardson's new ground for Rule 60(b) relief asserts the same claim that he asserted in his § 2254 petition—that his intellectual disability prohibits his execution under the Eighth Amendment. The district court (and this court) denied that claim *on the merits* under § 2254(d). Thus, Richardson plainly seeks a readjudication of the merits of his claim—based upon a purported change in substantive state law that revealed an error in the district court's prior adjudication of the merits of his claim. In the end, his new claim is still "effectively indistinguishable from alleging that [he] is, under the substantive provisions of the statutes, entitled to habeas relief," *id.* at 532, and he "ask[s] for a second chance to have the merits [of his claim] determined favorably" based upon a subsequently-issued decision. *Id.* at 532-33 n.5.

Richardson's argument that Rule 60(b) relief is available because the district court's "misinterpretation" of state law resulted in the court never reaching the second prong of the intellectual disability test leads to no different result. It is hardly unusual for a federal court to deny a federal habeas claim on the merits under § 2254(d), based upon the petitioner's failure to demonstrate the unreasonableness of the state court's decision on one of two factors necessary to establish the constitutional claim. The most common example, perhaps, would involve Sixth Amendment ineffective-assistance-of-counsel claims. *See Strickland v. Washington,* 466 U.S. 668 (1984). A federal court's denial of the claim based upon a single factor may turn out to be *erroneous,* at the time or in light of subsequently-issued court decisions. But the federal court's denial of the habeas claim is no less an adjudication of the claim *on the merits* for purposes of § 2254(d) and §

22

2244(b). It does not affect the finality of the judgment denying the claim on the merits, or change the fact that the habeas petitioner, if he subsequently tries to remedy an error via a Rule 60(b) motion, is still asking for a "second chance to have the merits determined favorably." *Gonzalez,* 545 U.S. at 532 n.5. If the district court erred in its interpretation of state law at all in 2011, it was an error that was required to be raised and addressed on direct appeal from the district court's judgment. It is not a means to circumvent the clear prohibition on the filing of a successive petition in § 2244(d).

Richardson may have been entitled to return to state court and ask it to revisit its prior adjudication of his intellectual disability claim based upon *Hall*, and to ask the United States Supreme Court to overturn the 2015 state court decision denying him relief under *Hall*. But he is not entitled to circumvent the statutory limitations on second or successive habeas petitions under § 2244(b), and reopen the federal court's final judgment denying his habeas claim on the merits under Rule 60(b), based upon *Hall* or the 2015 state court decision.[2]

---

[2] We also see no error in the federal courts' original adjudication of Richardson's intellectual disability claim. Neither the district court nor this court were tasked with reviewing Richardson's intellectual disability claim *de novo* under state law or federal law. We were tasked first with deciding whether the state court's determination that Richardson failed to prove significantly subaverage general intellectual functioning, based upon the clearly established law in *Atkins* and the evidence presented, was reasonable. And because that decision was reasonable, in light of all of the evidence, there was no need to address Richardson's *separate* challenges to the reasonableness of the state court's factual findings that Richardson had failed to prove significant limitations in two or more of ten adaptive skill areas as required by the second prong. Neither *Hall*, nor the state MAR court's rejection of Richardson's post-judgment *Hall* claim, changes the correctness of the district court's and this court's resolution of (Continued)

In the end, "[n]o matter how much lipstick [Richardson] applies to this particular pig, it is still a pig—that is to say, a [claim] for habeas" relief, *Day v. Trump,* 860 F.3d 686, 690 (D.C. Cir. 2017), that has already been adjudicated and denied on the merits by the federal courts in the habeas review proceedings. Despite Richardson's protestations to the contrary, his Rule 60(b) motion filed in district court asserted that his previous claim of intellectual disability was wrongly decided on the merits based upon *Hall,* and his new ground for Rule 60(b) relief asserts that his previous claim of intellectual disability was wrongly decided on the merits based upon the state court's 2015 decision. As *Gonzalez* makes, clear, these are habeas claims not properly brought in a Rule 60(b) motion. If Richardson is to have a second chance to litigate the merits of his intellectual disability claim, he must get it under § 2244(b).[3]

## IV.

For the foregoing reasons, we vacate the district court's order granting relief under Rule 60(b) and remand the case with instructions to dismiss the motion.

VACATED AND REMANDED WITH INSTRUCTIONS

---

Richardson's intellectual disability claim under *Atkins*. *Cf. Shoop v. Hill,* 139 S. Ct. 504, 509 (2019) (reversing and remanding the lower court's grant of habeas relief on petitioner's intellectual disability claim for reconsideration "based strictly on legal rules that were clearly established in the decisions of th[e] Court at the relevant time.").

[3] During the pendency of the State's appeal, Richardson filed a motion in this court seeking authorization to file a successive habeas petition under 28 U.S.C. § 2244(b). *See In re Richardson*, No. 17-7 (4th Cir. docketed Oct. 5, 2017). That motion remains under consideration and will be decided in a separate opinion.