**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-7**

In re: TIMOTHY RICHARDSON,

Movant.

Argued: December 10, 2019                          Decided: February 11, 2020

Before MOTZ and KEENAN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Motion for authorization to file successive habeas petition denied by unpublished per curiam opinion.

**ARGUED:** Stanley F. Hammer, WYATT, EARLY, HARRIS & WHEELER, LLP, High Point, North Carolina, for Movant. Jonathan Porter Babb, Sr., NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Respondent. **ON BRIEF:** Kenneth J. Rose, Durham, North Carolina, for Movant. Joshua H. Stein, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Timothy Richardson filed a motion under 28 U.S.C. § 2244(b)(3)(A), seeking authorization from this court to file a second or successive application for a writ of habeas corpus in order to challenge his capital sentence in North Carolina. He contends that he is intellectually disabled and, therefore, ineligible for a capital sentence under the Eighth Amendment to the United States Constitution. We deny the motion.

I.

Richardson was convicted and sentenced to death in 1995 for the kidnapping and murder of Tracy Marie Rich. His convictions and sentences were affirmed on direct appeal, *State v. Richardson*, 488 S.E.2d 148 (N.C. 1997), and the United States Supreme Court denied certiorari, *Richardson v. North Carolina*, 522 U.S. 1056 (1998). The underlying facts and procedural history of his case are exhaustively set forth in the state court decisions, as well as in this court's prior decisions in *Richardson v. Thomas*, 930 F.3d 587 (4th Cir. 2019), *Richardson v. Thomas*, 718 F. App'x 192 (4th Cir. 2018), and *Richardson v. Branker*, 668 F.3d 128 (4th Cir. 2012).[1]

Richardson then sought post-conviction relief from his death sentence via a motion for appropriate relief (MAR) in North Carolina state court, alleging that he is intellectually disabled and, therefore, ineligible to be sentenced to the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). In *Atkins*, the United States Supreme Court held that the

---

[1] Over the years, Richardson has raised numerous state and federal habeas claims seeking relief from his death sentence. In this opinion, we only address Richardson's prior claim that he is intellectually disabled.

execution of an intellectually disabled individual violates the Eighth Amendment's ban on cruel and unusual punishments, *id.* at 321, but left "to the States the task of developing appropriate ways to enforce that constitutional restriction upon their execution of sentences," *id.* at 317 (internal quotation marks and alterations omitted).

Under North Carolina's intellectual disability statute, Richardson was required to demonstrate that he had (1) "[s]ignificantly subaverage general intellectual functioning," defined as "[a]n intelligence quotient of 70 or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist," and (2) "[s]ignificant limitations in adaptive functioning," defined as "[s]ignificant limitations in two or more of [ten] adaptive skill areas." N.C. Gen. Stat. § 15A-2005(a)(1), (2) (2001).

The MAR court held an evidentiary hearing to consider the claim. The court considered Richardson's IQ scores, expert testimony regarding the standard error of measurement (SEM) generally recognized in such scores, and lay and expert testimony about Richardson's limitations in adaptive functioning. The court found that Richardson had failed to prove that he was intellectually disabled and denied the claim on the merits.

In his petition seeking certiorari review by the Supreme Court of North Carolina, Richardson argued that the lower court had "employed an overly restrictive construction of § 15A-2005, one that is contrary to the Eighth Amendment as interpreted by the United States Supreme Court's decision in *Atkins v. Virginia.*" *Richardson,* 930 F.3d at 590 (internal quotation marks and alteration omitted). Among other things, Richardson argued that the court had considered only the numerical scores on his qualifying IQ tests, failed to

3

consider the SEM, and erred in the assessment of his adaptive limitations. *See id.* The Supreme Court of North Carolina denied review. *See State v. Richardson*, 667 S.E.2d 272 (N.C. 2008).

In November 2008, Richardson filed his first petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254(d), challenging the reasonableness of North Carolina's adjudication of his *Atkins* claim. Richardson again argued that the state court had employed an overly restrictive construction of § 15A-2005, in violation of *Atkins*; gave weight only to the raw IQ test scores; and failed to use the SEM to adjust the scores. Richardson also argued that the state court's findings regarding his adaptive limitations were unreasonable. The district court denied Richardson's intellectual disability claim on the merits. We affirmed the intellectual disability ruling, and the United States Supreme Court denied certiorari review.[2]

In May of 2014, the United States Supreme Court issued its decision in *Hall v. Florida*, 572 U.S. 701 (2014), which considered a state prisoner's appeal from the Florida Supreme Court's rejection of his *Atkins* claim. Hall argued that the Florida Supreme Court had interpreted Florida's intellectual disability statute too rigidly to comply with *Atkins*' prohibition of the execution of the intellectually disabled, because it imposed a strict, cutoff IQ score of 70 or less. *Id.* at 704. The Court agreed, holding that this "rigid rule," which foreclosed "all further exploration of intellectual disability, . . . . create[d] an unacceptable

---

[2] *See Richardson v. Branker*, 769 F. Supp. 2d 896, 926-27 (E.D.N.C. 2011); *Richardson v. Branker*, 668 F.3d 128, 151 (4th Cir. 2012), *cert. denied*, *Richardson v. Branker*, 568 U.S. 948 (2012).

risk that persons with intellectual disability [would] be executed, and thus [was] unconstitutional." *Id.* More specifically, the "Court agree[d] with the medical experts that when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.* at 723.

In 2015, Richardson filed an amended MAR in North Carolina state court seeking to overturn his death sentence in light of *Hall*. Richardson argued that the North Carolina courts had similarly applied a rigid, cutoff score of 70 when it considered his claim and had failed to consider the SEM and clinically-appropriate assessment measures of adaptive deficits. The state MAR court denied Richardson's motion. Of relevance here, the court held that North Carolina had not "interpreted North Carolina's statute to preclude consideration of the [SEM] or to limit the introduction of evidence if the threshold showing of an IQ score of 70 has not been met." J.A. 1234. Accordingly, North Carolina's statute, unlike that in Florida, had been "interpreted consistently with *Atkins*." *Id.* Second, the court noted that Richardson had been "allowed to present evidence of his alleged deficits in adaptive functioning in a full evidentiary hearing without restriction," as well as evidence "on the standard error of measurement," *id.*, and that the court had "considered all of Richardson's IQ test scores, without limitation, as well as evidence of his alleged limitations in adaptive functioning," *id.* at 1234-35. "Thus, *Hall* "ha[d] no effect on [the court's] prior determination that Richardson is not intellectually disabled," *id.* at 1234, and the court had, "[i]n effect, . . . already interpreted North Carolina's law consistently with *Hall*," *id.* at 1235. Nevertheless, the state MAR court also considered Richardson's

5

amended claim on the merits, including supplemental affidavits from the state's expert regarding Richardson's intellectual-disability evaluation, and found that Richardson had still failed to provide evidence sufficient to support a finding that he is intellectually disabled. The North Carolina Supreme Court denied review, *see State v. Richardson*, 782 S.E.2d 736 (N.C. 2016), as did the United States Supreme Court, *see Richardson v. North Carolina*, 137 S. Ct. 337 (2016).

Richardson then returned to federal district court, seeking to reopen the final judgment on his original habeas petition under Rule 60(b)(6) of the Federal Rules of Civil Procedure in light of the *Hall* decision. Richardson again argued that the North Carolina state court had imposed a bright-line, cutoff IQ score of 70 or below when it adjudicated his claim and had failed to consider the SEM and his adaptive deficits. The district court granted the motion, but certified an interlocutory appeal to this court. Because Richardson's Rule 60 motion was the functional equivalent of a § 2254 petition that could not be filed absent prior authorization from this court, we vacated the order. *See Richardson*, 930 F.3d at 589. In the interim, Richardson filed the present motion for an order authorizing him to file a second or successive habeas application under 28 U.S.C. § 2244(b)(3), to which we now turn.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases."

6

*Tyler v. Cain*, 533 U.S. 656, 661 (2001); *see* 28 U.S.C. § 2244(b)(1). If the claim "was *not* presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions." *Id.* The first exception is for certain claims that rely on "a new rule of constitutional law," that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" to the petitioner. 28 U.S.C. § 2244(b)(2)(A). The second exception is for claims that are based on a "factual predicate [that] could not have been discovered previously through the exercise of due diligence," and which, "if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B). In order to obtain authorization to file a second or successive habeas application, Richardson must make a prima facie showing that he satisfies these requirements. *See* 28 U.S.C. § 2244(b)(3)(C); *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005) ("[B]efore the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions.").

A.

As noted above, the Supreme Court held in *Atkins* that the Constitution prohibits the execution of intellectually disabled persons, but left "to the States the task of developing appropriate ways to enforce the constitutional restriction." *Atkins*, 536 U.S. at 317 (internal quotation marks and alteration omitted). Richardson raised a claim of intellectual disability under *Atkins* in his first federal habeas petition, challenging the state court's adjudication

7

of his claim under N.C. Gen. Stat. § 15A-2005 and the Eighth Amendment, and the judgment denying that claim is final.

Since then, the Supreme Court has expounded on the *Atkins* ruling in two cases, making it clear that the state's discretion in this area is not without limits. In *Hall,* the Court held that a state cannot impose an IQ cutoff score of 70, which prohibits consideration of the SEM and evidence of adaptive deficits. *See* 572 U.S. at 704, 723. And in *Moore v. Texas*, 137 S. Ct. 1039 (2017), the Court held that the state court's intellectual disability determination, including the evaluation of adaptive deficits, must be informed by the medical community's current diagnostic criteria. *Id.* at 1048. This requirement that the state be "informed by the medical community does not demand adherence to everything stated in the latest medical guide. But neither does our precedent license disregard of current medical standards." *Id.* at 1049.

In his § 2244 motion, Richardson argues that the Supreme Court's decisions in *Hall* and *Moore* announced new rules of constitutional law that should be applied retroactively to cases on collateral review under the *Teague* framework. *See Teague v. Lane,* 489 U.S. 288 (1989). "Under *Teague*, as a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'" *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Teague*, 489 U.S. at 310); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 728 (2016). There are two exceptions to this "general bar on retroactivity." *Welch*, 136 S. Ct. at 1264. "First, new *substantive* rules generally apply retroactively. Second, new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and

8

accuracy of the criminal proceeding, will also have retroactive effect." *Id.* (internal citations, quotations marks, and alteration omitted).

Richardson spends a great deal of time arguing that, in light of these Supreme Court rulings, we should find that *Hall* and *Moore* announced new substantive rules of constitutional law and, therefore, should be applied to cases on collateral review under the *Teague* analysis. But in order to receive authorization to file a second or successive § 2254 petition, Richardson must do more than convince this court that *Hall* and/or *Moore* announced new substantive rules that *should* be applied retroactively to cases on collateral review. He must show that his claim "relies on a new rule of constitutional law" that has already been "*made retroactive to cases on collateral review by the Supreme Court*, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A) (emphasis added).

The Supreme Court has adopted a narrow view of the plain language in § 2244(b)(2)(A). *See Tyler*, 533 U.S. at 662. The Court explained that the term "'made' means 'held' and, thus, the requirement is satisfied only if [the Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review." *Id.* "Quite significantly, under this provision, the Supreme Court is the only entity that can 'make' a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." *Id.* at 663 (alteration omitted). Thus, a "new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court *holds* it to be retroactive." *Id.* The only exception to this requirement of an explicit holding is if we must say that a combination of Supreme Court holdings "necessarily dictate retroactivity

9

of the new rule." *Id.* at 666. "The relationship between the conclusion that a new rule is retroactive and the holdings that 'make' this rule retroactive . . . must be strictly logical— *i.e.,* the holdings must *dictate* the conclusion and not merely provide principles from which one *may* conclude that the rule applies retroactively." *Id.* at 669 (O'Connor, J., concurring) (alteration omitted). The holdings must "permit no other conclusion than that the rule is retroactive." *Id.*; *cf. United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012) (We are "not authorize[d] to read between the lines of a prior opinion to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review. The only way to make a new rule retroactive 'is through a '*holding*,' not through dictum.") (quoting *Tyler*, 533 U.S. at 663-64).

*Hall* and *Moore* do not address retroactivity, and no subsequent Supreme Court case has held that *Hall* or *Moore* apply retroactively to cases on collateral review. Richardson's reliance upon *Welch* and *Montgomery* for his argument that we must conclude that the Supreme Court has "made" *Hall* and *Moore* retroactively applicable to cases on collateral review falls well short of *Tyler*'s narrow exception, and Richardson has pointed us to no other combination of Supreme Court holdings that "logically dictate . . . no other conclusion than that the rule is retroactive." *Tyler*, 533 U.S. at 669 (O'Connor, J., concurring). Rather, the most that Richardson "can claim is that, based on the principles outlined in *Teague,* [the Supreme] Court *should* make *[Hall* and *Moore]* retroactive to cases on collateral review." *Tyler*, 533 U.S. at 666. That is not sufficient. *See, e.g.*, *In re Bowles*, 935 F.3d 1210, 1219 (11th Cir. 2019) ("*Hall* did announce a new rule of constitutional law, but the Supreme Court has not made that new rule retroactive to cases

10

on collateral review."); *In re Payne*, 722 F. App'x. 534, 539 (6th Cir. 2018) (rejecting petitioner's claim that various Supreme Court decisions and orders "dictate that the decisions in *Moore* and *Hall* are to be applied retroactively"); *In re Henry*, 757 F.3d 1151, 1159, 1161 (11th Cir. 2014) (holding that "*Hall* made no mention of retroactivity," no "subsequent Supreme Court case [has] addressed the issue, much less made *Hall* retroactive," and "[n]o combination of Supreme Court holdings compels the conclusion that *Hall* is retroactive to cases on collateral review"); *Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir. 2014) (denying motion for authorization to file a second or successive application based upon *Hall* because, "[u]nder *Tyler,* [petitioner] has not made a prima facie showing that the Supreme Court has held that *Hall* is retroactive").

B.

In supplemental briefing, Richardson argues that we should also authorize him to refile his intellectual disability claim based upon the Supreme Court's decision in *Atkins* – which *has* been made retroactively applicable to cases on collateral review by the Supreme Court. We reject this claim as well.

Richardson's attempt to raise a second intellectual disability claim based upon the rule announced in *Atkins* is plainly barred by 28 U.S.C. § 2244(b)(1). To circumvent this bar, Richardson advances a creative, but meritless, argument that the *Atkins* claim that he previously presented was not really "available" until the Supreme Court decided *Hall* and the North Carolina legislature amended its intellectual disability statute after the *Hall* decision was issued. At the outset, we note the obvious, logical problem with Richardson's argument that the *Atkins* claim he presented in his prior § 2254 application was previously

11

unavailable. This is because the argument is a transparent attempt on the part of Richardson to circumvent § 2244(b)(2)(A)'s requirement that the "new rules" announced by the Supreme Court in *Hall* and *Moore* must have been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.*

Richardson's intellectual disability claim based upon the Supreme Court's decision in *Atkins* was presented in his prior § 2254 application, and it is barred by § 2244(b)(1). And his attempt to dress up his *Hall* claim as an *Atkins* claim fails under § 2244(b)(2)(A). *See, e.g., In re Bowles,* 935 F.3d at 1216 (rejecting similar claim that *Atkins* only "became available to [petitioner] when the Supreme Court struck down Florida's rigid cutoff as unconstitutional in *Hall*"); *In re Bourgeois,* 902 F.3d 446 (5th Cir. 2018) (rejecting federal prisoner's argument that he should be allowed to file another *Atkins* claim, notwithstanding § 2244(b)(1) bar, because the Supreme Court's decision in *Moore* "now makes his claim viable").[3]

---

[3] Richardson's reliance upon the Fifth Circuit Court of Appeals' decisions in *In re Johnson*, 935 F.3d 284 (5th Cir. 2019) and *In re Cathey*, 857 F.3d 221 (5th Cir. 2017), do not avail him. *Cathey* and *Johnson* involved states that applied a strict cutoff score of 70, and habeas petitioners that had *never* presented an intellectual disability claim in a § 2254 petition, presumably because they had no score below the cutoff when they filed their first habeas petition. Accordingly, the petitioners in *Cathey* and *Johnson* did not face the § 2244(b)(1) bar. The Fifth Circuit held that such a first-time *Atkins* claim could be brought in a second or successive petition. The Eleventh Circuit, in contrast, rejected a similar argument that *Atkins* was "previously unavailable" to a petitioner when he filed his first habeas petition because then-existing state law would have doomed his petition, holding that "[t]here is no futility exception to the AEDPA's restrictions on second and successive petitions." *In re Bowles,* 935 F.3d 1210, 1217 (11th Cir. 2019). We need not decide this issue, however, because Richardson *did* file an *Atkins* claim in his first federal habeas application, and he was granted the unfettered ability to present evidence of the SEM and his adaptive deficits when his intellectual disability claim was adjudicated by the state court.

12

Richardson's argument that he should be allowed to file a second or successive, intellectual disability claim under *Atkins* because it was not "available" to him until the North Carolina legislature amended its intellectual disability statute in 2015 fares no better. Section 15A-2005 of the North Carolina Code implemented *Atkins*' directive that states develop the framework to enforce its constitutional prohibition against the execution of the intellectually disabled. *See* N.C. Gen. Stat. § 15A-2005 (2001). Neither that statute, nor any application of it, has been declared unconstitutional. *See Hall*, 572 U.S. at 715 (noting that North Carolina's statute could be, but has not been, interpreted as applying a bright-line cutoff score). And the North Carolina court did not apply a bright-line cutoff score to Richardson's claim. Nevertheless, in the wake of *Hall*, the North Carolina state legislature amended § 15A-2005 to clarify that intellectual-disability determinations include consideration of the SEM and the defendant's adaptive limitations under accepted clinical standards. *See* N.C. Gen. Stat. § 15A-2005 (2015).

To file a second or successive claim of intellectual disability, however, Richardson must make a prima facie case that he can rely upon a new rule of *constitutional law*, made retroactive to cases on collateral review by the Supreme Court. Changes in state law do not authorize the filing of a second or successive *federal* habeas petition under § 2244(b)(2)(A). *Cf. In re Bowles*, 935 F.3d at 1217-18 ("Congress did not say that the claim could proceed if it relied on any other type of change in case law. Congress knew how to say that if it had wanted to."). And when "conducting habeas review, a federal court is limited to deciding whether a [state] conviction [or sentence] violated the Constitution,

laws, or treaties of the United States," not whether there was an "error[] of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 68 (1991).[4]

## C.

Richardson next seeks to file a second or successive claim on the ground that he is actually innocent of the death penalty. *See* 28 U.S.C. § 2244(b)(3)(B). We deny this motion as well.

To file a second or successive habeas claim under § 2244(b)(2)(B), Richardson must make a prima facie showing of (1) a "factual predicate for the claim [that] could not have been discovered previously through the exercise of due diligence," and (2) that the new factual predicate, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant *guilty of the underlying offense.*" *Id.* (emphasis added).

Here, Richardson seeks only to challenge his eligibility for the death sentence, not the determination that he is guilty of the underlying offense of murder. Thus, he "does not fall within the narrow statutory exception in § 2244(b)(2)(B)(ii)." *In re Bowles*, 935 F.3d at 1220 (internal quotation marks omitted). Richardson's reliance upon *Sawyer v. Whitley*,

---

[4] We note that the state has argued that Richardson's attempt to file a second or successive claim under *Hall* and *Moore*, like his claim under *Atkins*, is also barred under 28 U.S.C. § 2244(b)(1). We need not decide the precise scope of the term "claim" for purposes of § 2244(b)(1) and (b)(2) in this decision because, even if we were to hold that Richardson's present-day *Hall* and *Moore* claims were not squarely "presented" in his prior habeas application, Richardson has failed to make a prima facie showing that he satisfies the requirements of § 2244(b)(2).

14

505 U.S. 333 (1992), provides him no avenue to file this claim. In *Sawyer*, the Supreme Court held that "actual innocence" for purposes of the "fundamental miscarriage of justice" exception to the procedural default of constitutional claims extends to claims that a petitioner is "actually innocent" of the death penalty. *See id.* at 336. However, this "judge-fashioned" exception in *Sawyer* did not survive Congressional enactment of AEDPA. *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997). "The 'actual innocence' exception of the prior law was judge-made, and so its contours were appropriately judge-fashioned and permissibly judge-expanded. The exception in [AEDPA] is graven in statutory language that could not be any clearer." *Id.; see also Bowles v. Sec.,* 935 F.3d 1176, 1182 (11th Cir. 2019) ("AEDPA forecloses the *Sawyer* exception in *all* circumstances, including § 2254 challenges to state death sentences."); *cf. Wright v. Angelone*, 151 F.3d 151, 164 n.8 (4th Cir. 1998) (noting "that other circuit courts narrowly have interpreted the . . . language in § 2244(b)(2) to require that habeas petitioners demonstrate actual innocence of the underlying crime to file a successive habeas petition on the basis of newly discovered evidence. A claim of 'innocence of the death penalty' only is no longer sufficient to warrant review.").

Richardson has also failed to make a prima facie showing that his claim otherwise satisfies § 2244(b)(2)'s requirements. Richardson seeks to present a claim that he is "actually innocent" of the death sentence, based upon a supplemental affidavit procured from the state's expert in 2014 and the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5). Even if Richardson could demonstrate that the substance of the expert's affidavit could not have been discovered by

due diligence at the time he filed his motion, he has failed to make the requisite showing that the expert's opinion "would be sufficient to establish by clear and convincing evidence that . . . no reasonable factfinder would have found" him to be eligible for the death penalty under the standards in existence at the time the state court adjudicated his claim. 28 U.S.C. § 2244(b)(2)(B). In addition, the state's expert's opinion was unchanged. "[N]othing from *Hall v. Florida*, or developments in the field of mental health, [had] affected his conclusion" that "Richardson is not intellectually disabled." J.A. 104.[5]

D.

The balance of Richardson's motion raises various constitutional challenges to § 2244's limitations on the filing of second or successive federal habeas petitions. Among other things, Richardson argues that our denying him the right to file a second or successive intellectual disability claim based upon *Hall, Moore,* and the amended version of the North Carolina statute, would violate several provisions of the United States Constitution, including Article I, Article III, the Due Process Clause, the Eighth Amendment, and the Equal Protection Clause. We have considered all of Richardson's arguments and find them to be without merit.

---

[5] To the extent Richardson argues that he should be given the opportunity to prove that he is intellectually disabled under the DSM-5, this argument also seeks to circumvent 28 U.S.C. § 2244(b)(2)(A). In *Moore,* the Supreme Court referenced the DSM-5, which was the medical standard in place when the state court considered the defendant's claim of intellectual disability. The Supreme Court in no way indicated that a state court's determination could be overturned based upon subsequently-issued medical standards, nor has it made *Moore* retroactively applicable to cases on collateral review. Rather, the Court held only that the state court's determination must be informed by current diagnostic criteria. *See Moore*, 137 S. Ct. at 1049.

16

The matter for decision today is whether Richardson's motion for an order authorizing the district court to consider a second or successive challenge to the state court's imposition of his death sentence satisfies the requirements set forth by Congress in § 2244(b). He has not done so. Moreover, Richardson has cited no authority to support his claim that § 2244(b) is an unconstitutional exercise of Congressional power or that our application of it would violate his constitutional rights. On the contrary, the Supreme Court and this court have rejected similar challenges to the constitutionality of AEDPA's limitations on federal habeas relief. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (holding that AEDPA's restrictions on successive habeas petitions do not amount to an unconstitutional suspension of the writ of habeas corpus, but rather "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'"); *In re Vial*, 115 F.3d 1192, 1197-98 (4th Cir. 1997) (explaining that the restrictions on multiple motions for post-conviction relief "amount[] to an entirely proper exercise of Congress' judgment regarding the proper scope of the writ and [fall] well within the compass of the evolutionary process surrounding the doctrine of abuse of the writ.") (internal quotation marks omitted); *Bowles,* 935 F.3d at 1182 (rejecting petitioner's claim that "any procedural obstacle to the consideration of a claim of intellectual disability must cede to the categorical protections of the Eighth Amendment" and, thereby, his "invitation to effectively declare part of AEDPA unconstitutional.").

IV.

For the foregoing reasons, we deny Richardson's motion for leave to file a second or successive habeas petition.

17

MOTION DENIED